441 P.2d 167

**Edward BOYER, Plaintiff-Appellant,**

**v.**

**The SHOSHONE–BANNOCK INDIAN TRIBES, a Federal Corporation, the Fort Hall Indian Reservation, the Shoshone-Bannock Tribal Business Council, Mary Matte, Kelsey M. Edmo, Layton L. Little-john, Herbert LeClair and Alan Tindore, Defendants-Respondents.**

**No. 9824.**

Supreme Court of Idaho.

May 16, 1968.

Robert F. McLaughlin, Mountain Home, for appellant.

Reed J. Bowen, Idaho Falls, for respondents.

SMITH, Chief Justice.

Appellant is a resident of the State of Idaho. He is a member of the Shoshone-Bannock Indian Tribe at the Fort Hall Indian Reservation. May 7, 1965, he commenced the proceeding at bar, a mandamus action, in the district court of seventh (formerly sixth) judicial district of the State of Idaho, in Bingham County. By such action he sought to compel restoration of his office as a member of the Shoshone-Bannock Business Council to which office he alleged he was duly elected in June, 1962, for a two year term, and from which he was illegally ousted by respondents, March 10, 1964. He further alleged that he was again elected to such office on June 1, 1964, to serve for the ensuing two years but that on June 3, 1964, respondents refused to seat him to such office. He also sought recovery of the salary of the office at the rate of $2,000.00 a year.

Appellant also sought the issuance of an order directed to respondents requiring them to show cause why a writ of mandamus should not issue requiring them to restore to appellant his seat as a member of respondent Shoshone-Bannock Tribal Busi-

ness Council, together with the emoluments of the office, including past due salary.

Prior to issuance of a show cause order respondents moved to dismiss the action upon the ground that the district court lacked jurisdiction over the subject matter of the action.

Respondents also filed an answer in which they again alleged that the court was without jurisdiction over the subject matter of the action. They further alleged that appellant was ousted from the Shoshone-Bannock Business Council pursuant to the provisions of the constitution and by-laws of the Shoshone-Bannock Tribes, upon written charges, after full opportunity for a hearing. They also alleged that the Law and Order Code of the Shoshone-Bannock Tribe as regularly adopted by the Tribal Business Council and approved by the Department of the Interior, specifically provides in Chapter 2, section 1 thereof, as follows:

"The Fort Hall Indian Tribal Court shall have jurisdiction of all suits wherein the defendant is a member of a recognized Indian tribe, residing on an Indian reservation * * *."

and that the tribal court had jurisdiction in the premises inasmuch as the allegations of appellant's petition showed the controversy to be a civil suit and that the defendants are Indians residing within the boundaries of Fort Hall Indian Reservation.

Respondents also raised the defense that appellant's cause of action was moot inasmuch as the term or terms for which he had been elected to office, had expired.

After having heard and considered respondents' motion to dismiss, the district court ruled that it "is without jurisdiction in said matter, and has no authority to adjudicate the issues involved," and thereupon dismissed the action.

Appellant has appealed from the judgment of dismissal, asserting that the district court erred in dismissing the action on the ground of lack of jurisdiction, and in failing to hear the evidence bearing on the issues; also in failing to accord appellant equal protection under the law.

The petition of appellant shows that the term of office to which he alleges he had been elected, has now expired. Whether appellant be considered to have been elected in June, 1962, or on June 1, 1964, or both, his two-year term or terms of office have ended, and he cannot now be restored to such office.

◼ Normally, an appeal will be dismissed where it appears that only a moot question is involved. See Bedford v. Gem-Irr. Dist., 51 Idaho 105, 4 P.2d 366 (1931); Chicago, M. & St. P. Ry. Co. v. Cardwell, 42 Idaho 25, 242 P. 977 (1926); Graves v. Berry, 35 Idaho 498, 207 P. 718 (1922); see also State ex rel. United Bonding Company of Indianapolis v. Kennedy, Mo.App., 364 S.W.2d 642 (1963); 55 C.J.S. Mandamus § 55, p. 96.

◼ Although appellant's term of office has expired, appellant in his petition for writ of mandamus filed May 7, 1965, prayed not only that respondents be required to restore him to his office, but also that they be required "to return him all the emoluments of his office which were wrongfully denied, together with his salary from the date of his removal from office in the amount of $2,000.00." Thus, while a portion of appellant's petition now presents a moot question, another portion presents an issue of damages which may constitute a justiciable controversy. The joinder of causes appears to have been properly effectuated, see I.R.C.P. 18(a). If our courts have jurisdiction to rule upon the issues presented in the first instance, then the district court shall entertain jurisdiction to determine such issues as continue to remain justiciable.

We are thus presented directly with the question whether our Idaho courts have jurisdiction to consider the action at bar.

According to his petition, appellant is a resident of the Fort Hall Indian Reservation, a full-blooded member of the Shoshone-Bannock Tribes and a resident of the State of Idaho. By Act of Congress, June

2, 1924, now appearing as 8 U.S.C.A. sec. 1401(a) (2) he is also a citizen of the United States. As such, he is a citizen of the State of Idaho.

Article I, sec. 18 of the Constitution of the State of Idaho provides that "Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay, or prejudice." Section 1 of the same Article provides that "All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety." The 14th Amendment to the Federal Constitution declares that no state shall deny to any person within its jurisdiction the equal protection of the laws.

 Notwithstanding the nature of our state and federal constitutions, the rights of Indians have not always been affected by the provisions of our constitutions and our laws. See Colliflower v. Garland, 342 F.2d 369 (9th Cir. 1965); Native American Church of North America v. Navajo Tribal Council, 272 F.2d 131 (10th Cir. 1959); Talton v. Mayes, 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); Barta v. Oglala Sioux Tribe of Pine Ridge Reservation of S. D., 259 F.2d 553 (8th Cir. 1958); Toledo v. Pueblo De Jemez, 119 F. Supp. 429 (1954—D.C.N.M.); Cohen's Handbook of Federal Indian Law, 1942, p. 124. It has been long and widely held that Congress has exclusive and plenary power to legislate with reference to the various Indian tribes. See Williams v. Lee, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959); Winton v. Amos, 255 U.S. 373, 392, 41 S.Ct. 342, 65 L.Ed. 684 (1921); Worcester v. State of Georgia, 6 Pet. 515, 31 U.S. 515, 8 L.Ed. 483 (1832); 18 U.S. C.A. §§ 1152, 1153; In re Colwash, 57 Wash.2d 196, 356 P.2d 994 (1960); State ex rel. Adams v. Superior Court etc., 57 Wash.2d 181, 356 P.2d 985 (1960);

Whyte v. District Court of Montezuma County, 140 Colo. 334, 346 P.2d 1012 (1959); cert. den. 363 U.S. 829, 80 S.Ct. 1600, 4 L.Ed.2d 1524 (1960); In re Long's Estate, 207 Okl. 259, 249 P.2d 103 (1952); Martinez v. Martinez, 49 N.M. 83, 157 P. 2d 484 (1945). Such exclusive federal jurisdiction is subject to no diminution by the states in the absence of specific congressional grant of authority to the states to act. See United States v. McGowan, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410 (1938); Perrin v. United States, 232 U.S. 478, 34 S.Ct. 387, 58 L.Ed. 691 (1914); Whyte v. District Court of Montezuma County, supra.

 As a corollary to federal sovereignty it is clear that state law has no force and effect, except as granted by federal law, within the territory of an Indian tribe in matters affecting Indians. See Williams v. United States, 327 U.S. 711, 66 S.Ct. 778, 90 L.Ed. 962 (1946); Blanset v. Cardin, 256 U.S. 319, 41 S.Ct. 519, 65 L. Ed. 950 (1921); Patterson v. Council of Seneca Nation, 245 N.Y. 433, 157 N.E. 734 (1927); Oklahoma Land Co. v. Thomas, 34 Okl. 681, 127 P. 8 (1912). Indian tribes have the power, absent some treaty provision or act of congress to the contrary, to enact their own laws for the government of their people, and to establish courts to enforce them. Colliflower v. Garland, supra; Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., 231 F.2d 89 (8th Cir. 1956); Williams v. Lee, supra. Adoption by a tribe of a law and order code constitutes the code as tribal law, not federal law, Oliver v. Udall, 113 U.S.App.D.C. 212, 306 F.2d 819 (1962), and the fact that all Indians are now citizens does not affect the jurisdiction of tribal courts. See Iron Crow v. Oglala Sioux Tribe of Pine Ridge Res., supra; United States v. Nice, 241 U. S. 591, 598, 36 S.Ct. 696, 60 L.Ed. 1192 (1916); Winton v. Amos, supra. See also F. Horne and M. Hurley, Federal Indian Law, 369 (1958); United States v. Quiver, 241 U.S. 602, 36 S.Ct. 699, 60 L.Ed. 1196 (1916).

■ Although the states have no inherent jurisdiction over Indian affairs within the territory of the Indian tribes, Congress has authorized such jurisdiction to be exercised within the states when and if the people of the individual states by affirmative legislative action obligate and bind the state to assumption thereof. In 1953, Congress adopted an enabling Act, 67 Stat. 588, which granted to all states the privilege of qualifying for such jurisdiction in Indian affairs. Section 7 of the Act of August 15, 1953, Public Law 280, provided that:

"The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal or civil causes of action, or with respect to both, as provided for in this Act; to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof."

See 28 U.S.C.A. § 1360 note; 18 U.S.C.A. § 1162; see also Whyte v. District Court of Montezuma County, supra. The Civil Rights Act, Public Law 90–284, adopted April 11, 1968, 82 Stat. 73, creates new standards governing jurisdiction over criminal and civil actions involving Indians, and it repeals Section 7 of the Act of August 15, 1953 (67 Stat. 588). However, the Civil Rights Act may or may not be applicable to the justiciable issue at bar, for the Act states, in Sec. 403(b) of Title IV, that the repeal of the 1953 Act "shall not affect any cession of jurisdiction made pursuant to such section prior to its repeal."

Idaho responded to Section 7 of the Act of August 15, 1953, prior to its repeal by the Civil Rights Act, by assuming jurisdiction over certain enumerated matters pertaining to Indian affairs. I.C. § 67–5101 states:

"The state of Idaho, in accordance with the provisions of 67 Statutes at Large, page 589 (Public Law 280) hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:

A. Compulsory school attendance.

B. Juvenile delinquency and youth rehabilitation.

C. Dependent, neglected and abused children.

D. Insanities and mental illness.

E. Public assistance.

F. Domestic relations.

G. Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof."

In addition to the matters enumerated in I.C. § 67–5101, Idaho assumed additional state jurisdiction over Indian affairs with the consent of individual tribal governing bodies; adding to the jurisdiction assumed by I.C. § 67–5101, I.C. § 67–5102 provides:

"Additional state jurisdiction in criminal and civil causes of action may be extended to particular reservations or Indian country with the consent of the governing body of the tribe occupying the Indian country effected [affected] by the assumption of such additional jurisdiction. This may be achieved by negotiation with the tribe or by unilateral action by the tribe. In every case the extent of such additional jurisdiction shall be determined by a resolution of the tribal governing body and become effective upon the tribe's transmittal of the resolution to the attorney-general of the state of Idaho. Such resolution may effectively accept jurisdiction as to any particular field of criminal or civil jurisdiction. All state jurisdiction extended by virtue of this act shall be concurrent (and not exclusive) with jurisdiction in the same matters existing in the tribes or the federal government."

Thus, state court jurisdiction, if such exists herein, over the subject matter of the instant action must be derived by what, in effect, is a bilateral agreement between the State of Idaho and the Shoshone-Bannock Tribe to confer jurisdiction to the state courts.

The pleadings in this action present nothing to indicate whether the Shoshone-Bannock Tribe has agreed to accept state jurisdiction over matters such as the one in controversy. As stated in appellant's petition, Section 5 of the corporate charter of the Shoshone-Bannock Tribes of the Fort Hall Reservation, as ratified on April 18, 1937, provides in part:

"5. The tribe, subject to any restrictions contained in the Constitution and laws of the United States, or in the Constitution and By-laws of the said tribe, shall have the following corporate powers, in addition to all powers already conferred or guaranteed by the tribal constitution and By-laws:

* * * "(i) To sue and to be sued in courts of competent jurisdiction within the United States; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the tribe or by the United States to the levy of any judgment, lien or attachment upon the property of the tribe other than income or chattels specially pledged or assigned." * * *

Such portion of the tribe's corporate charter, standing alone, is insufficient to show acceptance by the tribe of state jurisdiction, not included within the purview of I.C. § 67–5101. Without the entire corporate charter before us, together with the tribe's constitution and by-laws, and appropriate sections of its law and order code if such it has adopted, and without the benefit of information or evidence to indicate whether the Shoshone-Bannock Tribe has agreed to accept state jurisdiction over the instant matter pursuant to I.C. § 67–5102, we are unable to determine whether the district court has jurisdiction over the present cause of action, thereby to adjudicate any remaining justiciable issue of damage.

In view of the facts that a justiciable controversy may have been presented, and that state jurisdiction may exist in relation to this action, we are constrained to remand the action to the district court, for further proceedings.

In the event that the district court determines that the appellant's action should be referred, and does refer it, to the Shoshone-Bannock Tribal Court, and should such latter court refuse to entertain jurisdiction of the cause, then the district court is directed to assume jurisdiction thereof and make a determination of the justiciable controversy. See Idaho Constitution, Art. 1, Sec. 18; U.S.C.A.Const. Amendments 5 and 14; Martinez v. Southern Ute Tribe, 150 Colo. 504, 374 P.2d 691 (1962).

The judgment of dismissal is reversed and the cause is remanded for further proceedings consonant with this opinion. No costs allowed.

TAYLOR, McQUADE, McFADDEN and SPEAR, JJ., concur.