793 P.2d 682

STATE of Idaho, Plaintiff–Respondent,

v.

James McCORMACK,
Defendant–Appellant.

STATE of Idaho, Plaintiff–Respondent,

v.

Casey CREE, Defendant–Appellant.

Nos. 17742, 17898.

Supreme Court of Idaho.

Feb. 27, 1990.

Rehearing Denied June 20, 1990.

Mary L. Pearson, Edmonds, Wash., for appellants.

Jim Jones, Idaho Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen. (argued), Boise, for respondent.

BOYLE, Justice.

James McCormack and Casey Cree, both enrolled members of the Nez Perce Tribe, challenge the jurisdiction of the State of Idaho to require them to submit to breath tests under Idaho's implied consent statute, I.C. § 18–8002. The cases are consolidated on appeal because similar facts and identical legal issues are presented to the Court.

McCormack was driving a motor vehicle on U.S. Highway 95 within the Nez Perce

Indian Reservation in Lewis County when he was stopped by a deputy sheriff, arrested and advised that he must submit to an evidentiary breath alcohol test or, upon refusal to take the test, have his driving privileges suspended for one hundred eighty days. McCormack voluntarily submitted to the evidentiary test. He was charged with driving under the influence of intoxicants, in violation of I.C. § 18–8004. The charge was subsequently reduced to a misdemeanor in violation of I.C. § 18–8005(2) to which McCormack entered a conditional plea of guilty under I.C.R. 11(a)(2), and appeals the magistrate's denial of his motion to suppress the results of the evidentiary test.

Casey Cree was driving a motor vehicle on Highway 12 within the Nez Perce Indian Reservation in Nez Perce County when he was stopped by a member of the Idaho State Police, arrested and transported to the Lewiston Police Department where he was advised that he must submit to an evidentiary breath test or have his driving privileges suspended for one hundred eighty days. Cree also voluntarily submitted to the evidentiary test. Cree thereafter entered a conditional plea of guilty, and now appeals from the judgment of conviction and the magistrate court's denial of his motion to suppress the results of his test.

The only issues on appeal before this Court are those specific issues which were reserved in the written conditional plea agreements of each defendant. I.C.R. 11(a)(2) clearly requires that any issue desired to be reserved for appeal must be specified in writing.[1] McCormack specifically reserved a challenge to the use of the breath test as being beyond the jurisdiction granted to the state of Idaho,[2] and Cree specifically reserved the right to appeal the district court's decision denying his motion to suppress the breath test because he was an Indian arrested within the boundaries of a reservation.[3] In addition, Cree reserved the issue of the increased suspension period in I.C. § 18–8002. We conclude that both defendants properly reserved their rights to appeal the jurisdictional issues.

In both of these consolidated cases, defendants challenge the jurisdiction of the State of Idaho to require them to submit to a test of their breath under the implied consent statute, I.C. § 18–8002, on the grounds that as Indians, arrested within the boundaries of the Nez Perce Indian Reservation, 1) the state has not obtained the consent of the Nez Perce Tribe for any new assumption of criminal jurisdiction; 2) the penalty has been doubled from ninety to one hundred eighty days without the necessary consent of the Nez Perce Tribe; and/or 3) the statute is civil/regulatory in nature and the state has never assumed or been granted that jurisdiction.

■ Defendants first contend that I.C. § 18–8002[4] is an increased penalty crime

1. Rule 11(a)(2) requires that the conditional plea be 1) in writing, and 2) specify the adverse ruling. The relevant portion of the rule provides:

   (2) Conditional Pleas. With the approval of the court and the consent of the prosecuting attorney, a defendant may enter a conditional plea of guilty *reserving in writing* the right, on appeal from the judgment, to review any *specified adverse ruling.* If the defendant prevails on appeal, he shall be allowed to withdraw his plea. (Emphasis added.)

2. The McCormack conditional plea agreement stated, "[D]efendant reserves the right to withdraw his plea of guilty to the above charge if the defendant successfully challenges the state's use of the breath test results as *being beyond the jurisdiction of the state of Idaho* in reference to the Notice of Suspension under I.C. § 18–8002, for *an arrest of an Indian within the boundaries*

*of the Nez Perce Indian Reservation....*" (Emphasis added.)

3. The Cree conditional plea agreement clearly addressed the adverse ruling and reserved "the right to appeal this *Court's Opinion of December 30, 1987,* ... to his motion to suppress the breath test results of defendant, *an Indian arrested within the boundaries of the Nez Perce Indian Reservation....*" (Emphasis added.)

4. I.C. § 18–8002(3) provides in pertinent part as follows:

   **18–8002. Test of driver for alcohol concentration.**—(1) Any person who drives or is in actual physical control of a motor vehicle in this state *shall be deemed to have given his consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances* as defined in section 18–8004, Idaho Code, provided that such test is adminis-

and, as such, is an assumption of a new criminal jurisdiction requiring tribal consent. Defendants assert that the State has not obtained consent from the Nez Perce Tribe for assumption of this new criminal jurisdiction, and consequently I.C. § 18–8002, requiring an evidentiary test, seizure of license and an increased suspension term upon refusal to take the breath test, is not enforceable against tribal members when arrested or cited in Indian Country. Indian Country is defined by Congress as that land within the limits of an Indian reservation. 18 U.S.C. § 1151.

Public Law 280, passed by Congress on August 15, 1953, automatically transferred to five states, and offered all other states, certain limited jurisdiction over Indians within Indian Country. Act of Aug. 15, 1953, ch. 505, § 7, 67 Stat. 590, as amended 25 U.S.C. §§ 1321–1326 (1970), is commonly referred to as Public Law 280. The United States Supreme Court determined that Congress' motivation for enacting Public Law 280 "was centrally to curb lawlessness on the reservations and secondarily to cure the lack of adequate Indian forums for resolving private disputes." *Sheppard v. Sheppard*, 104 Idaho 1, 13, 655 P.2d 895, 907 (1982), citing *Bryan v. Itasca County*, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976).

■ In several prior decisions of this Court we have carefully analyzed the legislative history and policy of Public Law 280 and the various amendments to that statute, as well as the Idaho legislation that has followed since its enactment. *Sheppard v. Sheppard*, 104 Idaho 1, 655 P.2d 895 (1982); *State v. Major*, 111 Idaho 410, 725 P.2d 115 (1986); *State v. Michael*, 111 Idaho 930, 729 P.2d 405 (1986). It is not necessary for purposes of this appeal to restate that legislative process and history in detail, nor is it necessary to restate the entire body of law that has developed in this state as a result of Congress' enactment of Public Law 280 other than to refer to the guiding canons of construction and the basic legal principles involved when dealing with state jurisdiction over Indians. Indian tribal members are generally under the exclusive jurisdiction of the United States Government; however, states may be given specific authority by Congress over certain Indian affairs that affect the various states. *United States v. McGowan*, 302 U.S. 535, 58 S.Ct. 286, 82 L.Ed. 410 (1938); *State v. Michael*, 111 Idaho 930, 729 P.2d 405 (1986); *Boyer v. Shoshone–Bannock Indian Tribes*, 92 Idaho 257, 441 P.2d 167 (1968). When addressing issues of state jurisdiction in Indian Country, we are guided by the canon of construction that state and federal legislation passed for the benefit of Indians is to be construed in the Indians' favor. *State v. Major*, 111 Idaho 410, 725 P.2d 115 (1986); *Sheppard*

tered at the request of a police officer having reasonable grounds to believe that person has been driving or in actual physical control of a motor vehicle while under the influence of alcohol, drugs or of any other intoxicating substances.

. . . .

(3) At the time an evidentiary test for concentration of alcohol, drugs or other intoxicating substances is requested, *the person shall be informed* that if he refuses to take the test:
(a) *His license will be seized by the police officer* and a temporary permit will be issued; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violations;
(b) He has the right to request a hearing within seven (7) days to show cause why he refused to take the test;
(c) If he does not request a hearing or does not prevail at the hearing, *his license will be suspended absolutely for one hundred eighty (180) days;* and
(d) After submitting to the test he may, when practicable, at his own expense, have additional tests made by a person of his own choosing.

(4) *If the motorist refuses to take the evidentiary test after the information has been given* in accordance with subsection (3) above:
(a) *His license or permit shall be seized by the police officer* and *forwarded to the court* and a temporary permit shall be issued by the police officer which allows him to operate a motor vehicle until the date of his hearing, if a hearing is requested, but in no event for more than thirty (30) days; provided, however, that no peace officer shall issue a temporary permit pursuant to this section to a driver whose license or permit has already been and is suspended or revoked because of previous violations; ... (Emphasis added.)

*v. Sheppard,* 104 Idaho 1, 655 P.2d 895 (1982). Likewise, statutes and legislation involving Indian rights are to be construed liberally in favor of the Indians, with any ambiguous provisions interpreted to their benefit in order to respect and preserve the vestigial Indian sovereignty. *State v. Major,* 111 Idaho at 416, 725 P.2d at 121. The law is well established that the standard of construction requires this Court to narrowly construe any statutes extending state jurisdiction over Indian Country. *Id. Sheppard v. Sheppard,* 104 Idaho at 15, 655 P.2d 895.

The relevant language of Public Law 280 (Section 7) provided:

> The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or civil causes of action, or with respect to both, as provided for in this Act, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

Pursuant to Public Law 280, the Idaho legislature enacted Chapter 51, Jurisdiction in Indian Country, I.C. § 67–5101, wherein the state assumed jurisdiction for civil and criminal enforcement over certain matters, including operation of motor vehicles, arising in Indian Country. Idaho assumed criminal and civil jurisdiction over certain activities in Indian Country within the state under § 7 of Public Law 280 and I.C. § 67–5101, which provides in pertinent part:

> **67–5101. State jurisdiction for civil and criminal enforcement concerning certain matters arising in Indian country.**—*The state of Idaho, in accordance with the provisions of 67 Statutes at Large,* page 589 (Public Law 280) hereby *assumes and accepts jurisdiction for the civil and criminal enforcement of state laws* and regulations concerning the following matters and purposes *arising in Indian county* located within this state, as Indian county is defined by title 18, United States Code 1151, and ob-

ligates and binds this state to the assumption thereof:

> A. Compulsory school attendance
>
> B. Juvenile delinquency and youth rehabilitation
>
> C. Dependent, neglected and abused children
>
> D. Insanities and mental illness
>
> E. Public assistance
>
> F. Domestic relations
>
> G. *Operations and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.* (Emphasis added.)

In 1968, Congress passed the Indian Civil Rights Act, repealing Section 7 of Public Law 280 and thereby changing the method whereby a state could assume jurisdiction over Indians for acts committed in Indian Country. This new statute required states to obtain consent from the Indian tribes prior to assumption of any jurisdiction and provides:

> The consent of the United States is hereby given to any State *not* having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, *with the consent of the Indian tribe occupying the particular Indian country* or part thereof which could be affected by such assumption, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State. (Emphasis added.)

25 U.S.C. § 1321.

The consent provision of the 1968 statute was not made retroactive, and its clear language specifies that it applies only to states *not* previously having jurisdiction over criminal offenses committed in Indian Country and the amendment did not affect

prior assertions of jurisdiction under Public Law 280.[5] The Ninth Circuit Court of Appeals considered the scope of § 1321 and observed, "[T]hus, by its own terms, it cannot apply at all to states granted jurisdiction by other statutes...." *United States v. Hoodie*, 588 F.2d 292 (Or.1978).

Several states obtained jurisdiction directly and automatically under § 2 of Public Law 280, however, Idaho was one of the states not expressly enumerated, and obtained its jurisdiction under § 7 by the legislature's affirmative action. Idaho thus acquired jurisdiction, as well as the responsibility, to enforce certain civil and criminal state laws including the operation and management of motor vehicles upon its highways and roads located within Indian reservations. Accordingly, Idaho had previously been granted jurisdiction over these areas of law enforcement pursuant to § 7 of Public Law 280, and enactment of I.C. § 67–5101, prior to the Congress' enactment of § 1321. The limiting language of § 1321, enacted by Congress in 1968, does not require further tribal consent, nor does it limit Idaho's jurisdiction to enforce its motor vehicle laws upon Indian reservations because that jurisdiction had been granted and assumed prior to enactment of § 1321. Although § 1321 of the 1968 Indian Civil Rights Act repealed § 7 of Public Law 280, it specifically did not "affect any cession of jurisdiction made pursuant to such section prior to its repeal" (Civil Rights Act of 1968, P.L. No. 90–284, 82 Stat. 73, Sec. 403(b)) or rescind those areas of jurisdiction already assumed. *State v. Michael*, 111 Idaho 930, 932, 729 P.2d 405, 407 (1986). Jurisdiction assumed by Idaho in 1963 was not altered by the enactment of § 1321 and the repeal of § 7 of Public Law 280. In *State v. Michael*, we held that the state of Idaho has jurisdiction for enforcement and punishment of criminal offenses relating to the operation of motor vehicles upon highways maintained by the state of Idaho within the boundaries of Indian reservations, and that the validity of I.C. § 67–5101 was not changed or altered

by the repeal of § 7, Public Law 280, and observed that, "... those areas over which the state had assumed jurisdiction in 1963 remain under state jurisdiction." *State v. Michael*, 111 Idaho at 932, 729 P.2d at 407.

Prior to the enactment of I.C. § 67–5101 the Idaho legislature had enacted I.C. § 49–352 which provided for a ninety-day license suspension for failure to submit to a breath test. In 1984, the legislature repealed I.C. § 49–352 and enacted § 18–8002 which provided for a one-hundred-eighty-day suspension period. The increased suspension period does not constitute a substantial change in the law or new assumption of jurisdiction requiring tribal consent. The state of Idaho had previously assumed jurisdiction in this area of the law pursuant to Congress' consent in 1963, and further permission or consent from the Nez Perce Tribe, under 25 U.S.C. § 1321, is not required for enforcement of I.C. § 18–8002. Enactment of further procedures and an increase or change in penalty as implemented by the Idaho legislature in I.C. § 18–8002 does not alter the area of jurisdiction assumed by the state and, although the statute has been amended to increase the suspension period, it is not a substantial change sufficient to warrant invalidating the jurisdiction which had been conferred and assumed by the state of Idaho in 1963.

■ In the alternative, defendants contend that I.C. § 18–8002 is civil/regulatory in nature and the state of Idaho has never assumed jurisdiction in that area. Defendants contend that even though Idaho has been asserting civil jurisdiction since 1963 when I.C. § 67–5101 was enacted, the United States Supreme Court held that Public Law 280 authorized the states to assume only criminal jurisdiction. It is important to note that the statute specifically being challenged by defendants is the implied consent statute, not the driving under the influence statute. Defendants candidly acknowledge, however, that this distinction is narrow. The implied consent law, I.C.

---

**5.** See Goldberg, Public Law 280: The limits of State Jurisdiction over Reservation Indians, 22    U.C.L.A. L.Rev. 535 (1975).

§ 18–8002, is a part of the Idaho statutory scheme prohibiting driving while under the influence of intoxicating substances, and is codified in the section of the Idaho Code entitled "Crimes and Punishments." Although under I.C. § 18–8002(3) a driver has the physical ability to refuse to submit to an evidentiary test, that section did not create a statutory right in a driver to withdraw his implied consent or to refuse to submit to an evidentiary test to determine his blood alcohol level. *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989).[6] In examining the history of Idaho's implied consent statute, we conclude that it is an integral part of the driving under the influence statute, and is clearly part and parcel of the motor vehicle laws of this state.

Defendants acknowledge the state of Idaho has authority to enforce the motor vehicle laws of this state in Indian Country pursuant to the consent provided in Public Law 280 and as implemented by the Idaho legislature in I.C. § 67–5101. However, defendants argue that the state does not have jurisdiction to enforce the evidentiary test provisions of I.C. § 18–8002, because they are enrolled members of the Nez Perce Tribe and the incidents giving rise to their arrests and the resulting charges occurred within the boundaries of the Nez Perce Reservation. The state of Idaho, clearly having the jurisdiction and responsibility for enforcement and punishment of criminal offenses relating to the operation of

motor vehicles upon the highways and roads maintained by the state and its political subdivisions within the boundaries of Indian reservations, *State v. Michael*, 111 Idaho 930, 729 P.2d 405 (1986), also has jurisdiction to enforce the provisions of I.C. § 18–8002 for the same reasons. The implied consent law of I.C. § 18–8002 is ancillary to, and in aid of, Idaho's policy of enforcing its driving under the influence laws, and is specifically intended by the legislature to supplement the enforcement of its policy to protect the driving public and enforce the safe operation of motor vehicles upon the highways and roads of the state, including those that are located in or upon Indian reservations.

■ Having concluded that I.C. § 18–8002 is a valid exercise of Idaho's jurisdiction on an Indian reservation, we now address the underlying issue of defendant's argument that the results of the breath tests should be suppressed. In both cases before this Court, the defendants *voluntarily* submitted to the evidentiary breath test required by I.C. § 18–8002. Their voluntary submission to the test renders moot any challenge that otherwise may have been present related to the suppression issues. Neither the actual results of the tests nor the procedure involved in the analysis of the tests have been challenged by defendants. Rather, the defendants challenge only the state's right to

6. In *State v. Woolery*, 116 Idaho 368, 775 P.2d 1210 (1989), we held:

The Idaho Legislature has acknowledged a driver's *physical ability to refuse* to submit to an evidentiary test, but it did not create a *statutory right* for a driver to withdraw his previously given consent to an evidentiary test for concentration of alcohol, drugs or other intoxicating substances.

Importantly, the pre–1983 statute, I.C. § 49–352, covering implied consent to extract blood for a blood alcohol test, stated: "If such person having been placed under arrest and having thereafter been requested to submit to such chemical test refuses to submit to such chemical test the test shall not be given but the department shall suspend his license or permit to drive. . . ." The 1984 legislature repealed I.C. § 49–352, the legislative precursor of § 18–8002, and adopted § 18–8002 as a part of the new chapter 80 of title 18. In addition to maintaining the pre–1983 implied

consent language and the 1983 deletion of the language just discussed, this enactment added a section making it clear that a driver does not have the right to consult with an attorney before submitting to an evidentiary test. The state submits that the elimination of the statutory provision that the test shall not be given if it is refused, the continued use of the pre–1983 implied consent language, the addition of a specific statutory provision making it very clear that a driver does not have a right to consult with an attorney before submitting to the evidentiary test, along with the statement of purpose enacted as a part of the 1983 Act, reflect the legislative "get tough" policy. *This legislative "get tough" policy did not include the creation of a statutory right for a driver to refuse to submit to an evidentiary test requested by an officer who has reasonable cause to believe that such driver is under the influence.* (Emphasis added.)
*Woolery*, 116 Idaho at 372, 775 P.2d at 1214.

advise and administer the test under I.C. § 18-8002. By their voluntary acts in submitting to the § 18-8002 evidentiary test, defendants have waived any suppression issue that may have existed.

Neither the magistrate nor the district court erred in refusing to suppress the evidence obtained as a result of the tests.

Accordingly, the decision of the district court is affirmed.

BAKES, C.J., JOHNSON, J. and TOWLES, D.J. (Pro Tem.) concur.

BISTLINE, Justice, dissenting.

## PART I.  FOR A BETTER UNDERSTANDING OF APPLICABLE LAW

The majority opinion proceeds as though considering I.C. § 18-8002 as a criminal statute with criminal penalties. The legislature *clearly* declared the penalty for withholding consent to be *civil* in nature. This is the determinative issue of this case, because Public Law 280 limited the jurisdiction states could assume over civil litigation.

The legislative language is not open to debate:

Be it Enacted by the Legislature of the State of Idaho:

Section 1.  It is the intent of the Legislature that any suspension of a driver's license under the provisions of section 18-8002, Idaho Code, be separate and apart from any other suspension of a driver's license imposed by a conviction under the provision of chapter 80, title 18, Idaho Code, or any other Idaho motor vehicle law.  A suspension under Section 18-8002, Idaho Code, which is a *civil penalty*, is for the refusal to take the test for blood-alcohol concentration and *not a portion of any sentence for the underlying offense of driving under the influence* of alcohol, drugs or other intoxicating substances.

Act of July 1, 1987, ch. 220, 1987 Sess. Laws 469 (emphasis added).  Idaho Code § 18-8002 may be applied in this case only through I.C. § 67-5101.  Reduced to its essentials, I.C. § 67-5101 reads as follows:

[I]n accordance with the provisions of 67 Statutes at Large, page 589 (Public Law 280) [Idaho] hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian [C]ountry located within this state, ... and obligates and binds this state to the assumption thereof:

. . . .

G.  Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.

(Emphasis added.)

A first question to be asked and answered is: *How much in accordance* with Public Law 280 is I.C. § 67-5101G?  This requires examination of Section 7 of Public Law 280.  It provides:

SEC. 7.  The consent of the United States is hereby given to any other State not having jurisdiction with respect to criminal offenses or *civil causes of action*, or with respect to both, *as provided for in this Act*, to assume jurisdiction at such time and in such manner as the people of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof.

(Emphasis added.)  However, Section 7 does not provide a complete answer.  Section 4(a) of Public Law 280 defines when and to what extent Idaho may obtain jurisdiction *over civil causes of action:*

SEC. 4.  Title 28, United States Code, is hereby amended by inserting in chapter 85 thereof immediately after section 1359 a new section, to be designated as section 1360, as follows:

§ 1360.  State civil jurisdiction in actions to which Indians are parties.

(a) [Idaho] shall have jurisdiction over *civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian [C]ountry* ... to the same extent that [Idaho] has jurisdiction over other civil causes of action, and those civil laws of [Idaho] that

are of general application to private persons or private property shall have the same force and effect within such Indian [C]ountry as they have elsewhere within the State.

(Emphasis added.)

Case-law precedent from other jurisdictions and Idaho supply the general understanding of the purpose and effect of Sections 4 and 7. Up until the issuance of the majority opinion in this case, this Court, the United States Supreme Court, and other influential writers on the subject have all come to the same conclusion. Public Law 280 did not grant the states jurisdiction of *all* civil matters.

In a law review article written by Daniel Israel and Thomas Smithson, staff attorneys for the Native American Rights Fund, the authors explained what sort of civil jurisdiction a literal reading of Public Law 280 allows:

> A fair reading of these two clauses [from § 4] suggests that Congress never intended 'civil laws' to mean the *entire* array of state non-criminal laws, but rather that Congress intended 'civil laws' to mean those laws which have to do with private rights and status. Therefore, 'civil laws ... of general application to private persons or private property' would include the laws of contract, tort, marriage, divorce, insanity, descent, etc., but would *not* include laws declaring or implementing the states' sovereign powers, such as the power to tax, grant franchises, etc. These are not within the fair meaning of 'private' laws.

Israel & Smithson, Indian Taxation, Tribal Sovereignty and Economic Development, 49 N.D.L.Rev. 267, 196 (1973) (emphasis added, ellipses in original).

This passage was quoted with approval in *Bryan v. Itasca County,* 426 U.S. 373, 384 n. 10, 96 S.Ct. 2102, 2108 n. 10, 48 L.Ed.2d 710 (1976). The United States Supreme Court opinion agreed with the article's characterization of § 4 of Public Law 280:

> Piecing together as best we can the sparse legislative history of § 4, subsection (a) seems to have been primarily intended to redress the lack of adequate Indian forums for resolving private legal disputes between reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes; this is definitely the import of the statutory wording conferring upon a State 'jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in ... Indian country ... to the same extent that such State ... has jurisdiction over other civil causes of action.' With this as the primary focus of § 4(a), the wording that follows in § 4(a)—'and those civil laws of such state ... that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State'—authorizes application by the state courts of their rules of decision to decide such disputes.

*Bryan,* 426 U.S. at 383–384, 96 S.Ct. at 2108 (footnote omitted).

This Court cited to *Bryan,* and to the article just discussed, in *Sheppard v. Sheppard,* 104 Idaho 1, 13, 655 P.2d 895, 907 (1982). In that opinion, Justice Shepard wrote:

> In *Bryan,* the [United States Supreme] Court undertook the most comprehensive examination of Public Law 280 to date, and while it is not directly on point, we look to it for whatever guidance it may offer. Itasca County attempted to levy a personal property tax on a mobile home owned by an enrolled member of the Minnesota Chippewa Tribe which was located on trust land within the boundaries of the Leech Lake Reservation. The Court held that there was no inherent authority to tax the property so located, and that Public Law 280 did not grant the states such a right. Examining and quoting unpublished transcripts of the hearings on the House bill, it was revealed that the *purpose behind the civil jurisdiction section was to provide Indians access to state courts, 'to redress the lack of adequate Indian forums for resolving private legal disputes between*

reservation Indians, and between Indians and other private citizens, by permitting the courts of the States to decide such disputes.' 426 U.S. at 383, 96 S. Ct. at 2108.

. . . .

Hence, we conclude that *Bryan* draws a clear distinction between state regulatory and taxing activity, which is not authorized by Public Law 280, and state jurisdiction over private civil actions [such as] divorce, which is authorized by that law.

*Sheppard,* 104 Idaho at 13, 655 P.2d at 907 (emphasis added).

The United States Supreme Court recently reinvigorated this interpretation of Public Law 280 in *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987). Referring to *Bryan,* the Court said:

We held [in *Bryan*], therefore, that Minnesota could not apply its personal property tax within the reservation. Congress' primary concern in enacting Pub.L. 280 was combatting lawlessness on reservations. *Id.,* at 379–380, 96 S. Ct., at 2106–2107. The Act plainly was not intended to effect total assimilation of Indian tribes into mainstream American society. *Id.,* at 387, 96 S.Ct., at 2210. We recognized that *a grant to States of general civil regulatory power over Indian reservations would result in the destruction of tribal institutions and values.* Accordingly, *when a State seeks to enforce a law within an Indian reservations under the authority of Pub.L. 280, it must be determined whether the law is criminal in nature,* and thus fully applicable to the reservation under § 2, *or civil in nature, and applicable only as it may be relevant to private civil litigation in state court.*

*Cabazon,* 107 S.Ct. at 1088 (emphasis added). The Court determined that California's bingo statute regulating the playing of bingo games was not criminal but regulatory in nature, and the state therefore did not have the jurisdiction to enforce the statute on Indian lands:

California argues, however, that high stakes, *unregulated* bingo, the conduct which attracts organized crime, is a misdemeanor in California and may be prohibited on Indian reservations. *But that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280. Otherwise, the distinction between § 2 and § 4 of that law could easily be avoided and total assimilation permitted.*

*Id.,* at 1089 (some emphasis added).

## PART II.   A CORRECT APPLICATION OF GOVERNING LAW

The following appears to be the holding achieved in Idaho by today's majority, and as well it comprises the total extent of the *ratio decendi* which moves it to the holding:

Defendants *acknowledge* the state of Idaho has authority to enforce the operation of motor vehicle laws of this state in Indian Country pursuant to the consent provided in Public Law 280 and as implemented by the Idaho legislature in I.C. § 67–5101. However, defendants argue that the state does not have jurisdiction to enforce the evidentiary test provisions of I.C. § 18–8002, because they are enrolled members of the Nez Perce Tribe and the incidents giving rise to their arrests and the resulting charges occurred within the boundaries of the Nez Perce Reservation. *The state of Idaho, clearly having the jurisdiction and responsibility for enforcement and punishment of* **criminal** *offenses relating to the operation of motor vehicles upon the highways and roads maintained by the state and its political subdivisions within the boundaries of Indian reservations,* State v. Michael, *111 Idaho 930, 729 P.2d 405 (1986), also has jurisdiction to enforce the provisions of I.C. § 18–8002 for the same reasons.*

117 Idaho at 1014, 793 P.2d at 687 (1990) (emphasis added.) That the defendants so "acknowledge" lends no support to the majority's conclusion that the state's jurisdiction over enforcement and punishment of

motor-vehicle-related *criminal* offenses committed upon the state highways *ipso facto* also extends to enforce the *civil* provisions of I.C. § 18–8002. Idaho Code § 18–8002 is declared a *civil* penalty, as the legislature wrote in the King's English. To presume that the state's properly assumed jurisdiction over the enforcement of criminal offenses also includes the enforcement of § 18–8002 is simply wrong.

I remind the majority that this Court authored, and in 1982 the legislature accordingly enacted, legislation which made into infractions conduct which had theretofore constituted misdemeanor criminal offenses. *Section 49–1502 and section 49–1505 of that act contain provisions identical in substance to § 18–8002,* insofar as embodying the suspension of a driver's license is concerned, as may be readily noted:

> **49–1502. Procedure for processing infraction citations.**—An infraction is a civil public offense, but.... [7]

> **49–1505. Suspension of operator's license for failure to pay underlying traffic infraction penalty—Appeal.**—(1) The department shall immediately suspend the license, permit and operating privileges of any operator or chauffeur upon receiving notice from any court of the state that a person has failed to pay the penalty for a traffic infraction judgment.

In the instance before us today, the legislature acting of its own volition, created yet another *civil infraction* to wit, refusing an officer's request to submit to a test for sobriety. By implicitly considering I.C. § 18–8002 as a criminal offense—because it is found in the Criminal Code (put there by the codifiers of the Idaho Code, and in the company of other offenses such as the Motion Picture Fair Bidding Act)—and citing to this Court's holding in *State v. Michael,* 111 Idaho 930, 729 P.2d 405 (1986), the majority incorrectly addresses

the issue presented. Public Law 280 did not authorize the state of Idaho to assume jurisdiction over all cases involving civil and regulatory disputes. Up until now, this Court has admirably applied the limiting language of I.C. § 67–5101, in accordance with Public Law 280, including Section 4(a).

Another statement by the majority that requires negative comment is the insistence that McCormack's and Cree's consent to the breath tests was voluntary:

> Having concluded that I.C. § 18–8002 is a valid exercise of Idaho's jurisdiction on an Indian reservation, we now address the underlying issue of defendant's argument that the results of the breath tests should be suppressed. In both cases before this Court, the defendants *voluntarily* submitted to the evidentiary breath test required by I.C. § 18–8002. Their voluntary submission to the test renders moot any challenge that otherwise may have been present related to the suppression issues.... *By their voluntary acts in submitting to the § 18–8002 evidentiary test, defendants have waived any suppression issue that may have existed.*

117 Idaho at 1014–1015, 793 P.2d at 687–688 (some emphasis added.) This italicized statement above is incorrect. A good share of the oral argument included the issue of voluntariness as against the contention that the defendant's submission to a test was *coerced* by the threats of the officers that the defendants *would be deprived of their drivers' licenses if they did not take the tests.* Also it was on that basis that the conditional pleas of guilty were entered.

The majority points out that McCormack and Cree entered conditional plea agreements in order to appeal the trial court's admission of the breath test results. For the reasons stated herein, the arresting officers did not have authority to threaten

---

7. That same 1982 legislation also amended I.C. § 18–111 to read as it now does:

**18–111. Felony, misdemeanor and infraction defined.**—A felony is a crime which is punishable with death or by imprisonment in the state prison. *An infraction is a civil public* *offense, not constituting a crime,* which is punishable only by a penalty not exceeding one hundred dollars ($100) and for which no period of incarceration may be imposed. Every other crime is a misdemeanor.

McCormack and Cree with the implied consent law. The tribal council had never been asked to give its consent to being bound by, of all things, the state's implied consent statute, I.C. § 18–8002. My memory not failing me, I clearly recall one member of the Court posing this question to the deputy attorney general at oral argument: Supposing the officer had threatened to cut off one of McCormack's ears if he did not consent to taking the test? The consents were indeed coerced by threats of seizure and suspension of driving licenses. The defendants therefore are clearly entitled to withdraw their pleas of guilty.

The state might do well to take the simple step heretofore not taken, *i.e.*, request the consent of the tribal councils involved throughout the state. There is no reason whatever for indulging in the belief that the councils are unwilling to do their part in diminishing the carnage daily taking place on roads and highways of the state and its political subdivisions. That the state today gathers a majority of this court's membership willing to join Justice Boyle's opinion does not suggest that the state is serving its intended purpose of highway safety. The majority's error is failing to take heed that I.C. § 67–5101, as presently written, *is not in accordance* with the federal enabling legislation.

## ON DENIAL OF PETITION FOR REHEARING

BISTLINE, Justice, Dissent on denial of petition for rehearing.

A majority of four has decided not to grant a rehearing, despite the numerous good points raised by the petitioners in their briefs in support of their petition. Moreover, the majority has deigned not to respond to my dissenting opinion, and it now appears that the majority has also deigned not to respond to the petitioners. Not one page, not one paragraph, not even one sentence has been expended in an attempt to respond to the petitioners' supporting brief. Fortunately, this Court is not the only court to which the defendants may resort. The federal courts are prepared to remedy that which has been im-

properly done in the name of federal law. For sixteen years I have been mindful of the words of caution which Justice Bakes, joined in dissent by Justice McQuade, addressed to an equally non-responsive majority:

I fear that the majority's decision today is only the conclusion of round one of appellant's case. Round two will be an action under the Uniform Post Conviction Procedures Act, I.C. § 19–4901 et seq. on the ground that appellant's constitutional rights were violated because of the due process argument and on the ground of competency of counsel for failure to assign as error the obvious defect in this case. If round two proves unfruitful for the defendant, then round three will be a petition in the federal courts under 28 U.S.C.A. § 2254 to set aside the conviction. State courts often bemoan the intervention of the federal courts in state cases, but so long as highly prejudicial errors, ... remain uncorrected in state courts it is probably a good thing that federal courts are available to correct such mistakes.

*State v. Swenor,* 96 Idaho 327, 334, 528 P.2d 671, 678 (1974) (footnote omitted).

No purpose will be served by reiteration of the correct analysis presented in my dissent. However, excerpts from the defendants' brief in support of their petition for rehearing are presented as suggestive of the enormity of the error in the majority opinion which flies directly in the face of *California v. Cabazon Band of Mission Indians,* 480 U.S. 202, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987):

### ARGUMENT I.

THERE IS NO JURISDICTIONAL BASIS TO IMPOSE CIVIL/REGULATORY LAWS SUCH AS I.C. 18–8002 UPON INDIANS IN INDIAN COUNTRY.

I.C. 49–357, the predecessor of I.C. 18–8002, was an administrative statute which provided for hearings before the Department of Motor Vehicles. I.C. 18–8002 provides for civil adjudicatory hear-

ings. Although both statutes were/are regulatory, neither statute can assert jurisdiction over Indians in Indian Country.

Accession to and assumption by Idaho of jurisdiction for criminal enforcement and punishment of motor vehicles offenses on Indian reservations (*State v. Michael, supra*), does not, and cannot reserve subsequent jurisdictional power for the state to impose a law such as I.C. 18–8002, which is civil/regulatory in nature, [carries a civil] penalty, and [is] express[ly civil by] legislative designation.

The United States Supreme Court made it clear in *Cabazon, supra,* that P.L. 280 did not authorize the states to enforce civil/regulatory laws upon Indians in Indian Country. When the Indian Civil Rights Act (ICRA) repealed P.L. 280, ... the ICRA expressly barred the states from asserting any new jurisdiction over Indians in Indian Country without permission of the tribes.

I.C. 18–8002 was drafted after the Indian Civil Rights Act of 1968 (ICRA), but before the United States Supreme Court undertook to explain the scope and impact of the ICRA's repeal of P.L. 280. Without the benefit of the clarification provided in *Cabazon, supra,* the Idaho legislature has considered itself to have jurisdiction to impose a civil/regulatory law upon Indians in Indian Country, and has expressly directed that I.C. 18–8002 be distinguished as civil, noting the statute to be 'separate and apart' from other sanctions or laws. It is inconsequential that I.C. 18–8002 might otherwise be considered a criminal statute, since the legislature has explicitly provided for civil penalties....

The State has advanced a recent Idaho decision in support of its contention of state power to impose the Implied Consent law upon the Appellants. Yet, the *Woolery* case does not fortify the State's position, since *Woolery* [only] represents a narrow holding that I.C. 18–8002 does not restrict '... the ability of a police officer to obtain evidence of a more serious crime of vehicular manslaughter (18–

4006), following the reasoning in *Schmerber v. California.*' (cites omitted).

The major distinguishing factor between *Woolery* and the case at bar is that in the instance case, the state's power to impose a law such as I.C. 18–8002 upon Indians in Indian Country is challenged as violative of federal Indian law and Indian treaty rights, not constitutional rights. The instant case asks whether the new state law, even if valid against non-Indians, meets federal prerequisites to have any effect at all in Indian Country, thereby defeating any argument of this issue being moot.

Appellants respectfully clarify their position that the state of Idaho does not maintain jurisdiction over them via I.C. 18–8004 (Driving Under the Influence), for purposes of attaching a subsequent jurisdictional premise for new, post ICRA laws that are otherwise proscribed by federal legislation.... Such grounds for jurisdiction equate to "bootstrapping" in the face of the explicit congressional determinative that from the Act's effective date on, states may no longer acquire new jurisdiction over Indians in Indian Country; unless and until consent is acquired from the respective tribes.

Appellants assert that since I.C. 18–8002 in its present substance and form does not comport with a criminal statute; and since the state of Idaho has failed to adhere to the statutory requisites of the ICRA, jurisdiction cannot properly be had over the Appellants. From this, any evidence obtained as a result of an improper exercise of such jurisdiction, may not be used against the Appellants.

### ARGUMENT II.

### THE SUPPRESSION OF APPELLANTS' BREATH TEST RESULTS IS NOT A MOOT ISSUE WHEN THE STATE LACKS JURISDICTION TO REGULATE BREATH TESTING.

If the state's request that Appellants submit to the breath test violates the Treaty of 1855 between the Nez Perce

and the United States, P.L. 280, and I.C. 67–5101, then the issue as to whether the breath test results should be suppressed has not been rendered moot. Appellants submission to the breath test is not analogous to voluntarily submitting oneself to a court lacking jurisdiction. Absent any advice to the Appellants that the state lacked jurisdiction to suspend their driving privileges upon refusal, Appellants' 'submission' was coerced by the threat of sanctions for refusal, and could not have been knowingly and voluntarily waived.

If I.C. 18–8002 is criminally applied to Indians on Reservations, but applied civilly to non-Indians, then the Indian Appellants' rights to equal protection under the laws of the state have been violated.

## CONCLUSION

For all of the foregoing reasons, Appellants respectfully request that the breath results be suppressed and their convictions overturned.

Supplemental Brief of Petitioners in Support of Petition for Rehearing, 1–4.

The majority opinion and its author are not remiss in explaining the issue. The statement of the issue, found at page three of the slip opinion, is concise and to the point:

> McCormack specifically reserved a challenge to the use of the breath test as being beyond the jurisdiction granted to the state of Idaho, and Cree specifically reserved the right to appeal the district court's decision denying his motion to suppress the breath test because he was an Indian arrested within the boundaries of a reservation. In addition, Cree reserved the issue of the increased suspension period in I.C. § 18–8002.

(Footnotes omitted.)

The majority opinion also does a service by including the text of I.C. § 18–8002 on page four, and explaining what civil penalties that section includes. In addition, the majority dutifully discusses the rule of construction with respect to Indian affairs on page six. All federal and state laws should be construed in favor of the Indian Nations and their autonomy. And, as a final note in praise of the majority opinion, it also correctly reports that the Indian Civil Rights Act demands that the Indian Nations be asked before any State assumes jurisdiction over Indian affairs.

But putting all accolades aside, there are some serious inconsistencies and omissions in the opinion, which the majority appears to ignore. First, the majority states on page two that the petitioners "voluntarily submitted" to an evidentiary test. On the other hand, on the next page of the opinion the majority states that the petitioners were arrested and taken into custody. The coercion involved in a vehicle stop, followed by arrests, does not to my mind suggest a voluntary act on the part of those who are arrested. In fact, I firmly believe that few if any citizens of this or any other state (or Nation) can characterize such interaction with the police as voluntary.

Second, the opinion states on page nine that a doubling of the license suspension period was not a "substantial change in the law or new assumption of jurisdiction requiring tribal consent." If that is not a substantial change, then what does the opinion suggest would be a substantial change? By omitting all discussion of what constitutes a substantial change, in the law, and by not citing to any authority, the majority's argument that no substantial change occurred in essence is no more than sheer ipse dixit. Does the majority considers the felony penalty for a third DUI to be the sort of change in penalty requiring tribal consent? For a discussion of recent felony DUI cases, see *State v. Craig*, 117 Idaho 983, 793 P.2d 215 (1990), and *State v. Bever*, 118 Idaho 80, 794 P.2d 1136 (1990).

On the same page the majority acknowledges that the petitioners characterized the distinction between the implied consent statute and the driving under the influence statute as a narrow one. While the petitioners did in fact assert this in one of their briefs, this Court's penchant for adopting the mischaracterization of the law that is placed before it by the parties is not sound. *See also Ochoa v. Idaho Special Insur-*

**1022**

ance *Fund,* 118 Idaho 71, 794 P.2d 1127 (1990). The distinction between a criminal statute and a statute that carries only civil penalties is by no means narrow. This is especially so when the underlying issue is whether an Idaho state court has jurisdiction over the enforcement of the civil statute.

No authority is cited on page nine for the notion that the civil sanction contained in the implied consent law is somehow an integral part of the criminal laws on drunk driving. This argument by conclusion is continued by the majority on page eleven, where the opinion concludes that jurisdiction over criminal law must provide the State with jurisdiction over this civil law. Again, no authority is cited, and no meaningful discussion is provided.

On the same page the conclusion is uttered that the suppression issue is moot, because the petitioners *voluntarily* submitted to the evidentiary tests. Such appears to be an appellate finding, and also one which is unsubstantiated.

In conclusion, although the majority opinion presents pleasant and easy reading, there is reason to fear that is so only because it lacks analytical substance and thought. The majority does not answer the dissent, or the petitioners' new call for a second and more incisive examination of the statutory scheme of Idaho and the Congressional authorization to the states. As earlier pointed out herein, the philosophy of Justice Bakes in *Swenor* in all probability will serve to redress the substantial inroad this Court's opinion today does to *Cabazon:*

> State courts often bemoan the intervention of the federal courts in state cases, but so long as highly prejudicial errors ... remain uncorrected in state courts it is probably a good thing that federal courts are available to correct such mistakes.

*State v. Swenor,* 96 Idaho at 334, 528 P.2d at 678 (Bakes, J., dissenting, joined by McQuade, J.).