123 P.3d 710

STATE of Idaho, Plaintiff–Respondent,

v.

Elena M. AMBRO, Defendant–Appellant.

No. 31181.

Court of Appeals of Idaho.

Oct. 28, 2005.

John Michael Adams, Kootenai County Public Defender; Daniel G. Cooper, Deputy Public Defender, Coeur d'Alene for appellant. Daniel G. Cooper argued.

Hon. Lawrence G. Wasden, Attorney General; Marty M. Raap, Special Deputy Attorney General, Coeur d'Alene, for respondent. Marty M. Raap argued.

PERRY, Chief Judge.

Elena M. Ambro appeals from her judgment of conviction, entered following her conditional plea of guilty to possession of a controlled substance, reserving the right to appeal the district court's order denying her motion to dismiss and her motion for reconsideration. For the reasons set forth below, we vacate Ambro's judgment of conviction.

## I.

### FACTS AND PROCEDURE

Ambro, an enrolled citizen of the Coeur d'Alene Tribe, was driving her vehicle within the boundaries of the Coeur d'Alene Indian Reservation on a highway maintained by the state. A tribal officer stopped Ambro for an alleged traffic infraction. A county sheriff's officer then arrived and arrested Ambro on an outstanding bench warrant for an unrelated case. While searching Ambro incident to her arrest, the officer discovered methamphetamine. Following Ambro's arrest, the tribal and county officers obtained a search warrant, searched Ambro's home located on the reservation, and found paraphernalia and marijuana. Ambro was charged with possession of methamphetamine with intent to deliver, I.C. § 37–2732(a); possession of mari-

juana, I.C. § 37–2732(c); and possession of drug paraphernalia, I.C. § 37–2734A.

Ambro filed a motion to dismiss, alleging that the state lacked jurisdiction to prosecute crimes committed by an Indian on an Indian reservation and that prosecution must lie with the federal or tribal court. In response, the state filed, at the time of the hearing on Ambro's motion, an amended information which dismissed the original charges and charged Ambro with possession of methamphetamine. I.C. § 37–2732(c). The state asserted at the hearing that it intended to produce evidence demonstrating that Ambro possessed methamphetamine at the time of her arrest on a state highway and would not rely on any evidence secured during the search of Ambro's house. The district court concluded that, because the state had subject matter jurisdiction to prosecute crimes concerning the operation and management of motor vehicles on state highways, it had jurisdiction to prosecute Ambro for possession of a controlled substance that she possessed while in a motor vehicle on a state highway. Accordingly, the district court denied Ambro's motion to dismiss. Ambro filed a motion for reconsideration, which the district court also denied. Ambro then pled guilty to possession of a controlled substance, reserving her right to appeal the district court's denial of her motion to dismiss and her motion for reconsideration. This appeal followed.

## II.

### ANALYSIS

■ The state has no power on tribal lands absent a grant of authority from Congress. *State v. Barros*, 131 Idaho 379, 381, 957 P.2d 1095, 1097 (1998). Rather, Indians have the right to make their own laws and be ruled by them. *Nevada v. Hicks*, 533 U.S.

353, 361, 121 S.Ct. 2304, 2311, 150 L.Ed.2d 398, 408-09 (2001). Tribal sovereignty is dependent on, and subordinate to, only the federal government, not the states. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 207, 107 S.Ct. 1083, 1087, 94 L.Ed.2d 244, 253-54 (1987). Although criminal matters within the exterior boundaries of an Indian reservation are generally within the exclusive jurisdiction of the tribal courts, Congress has the power to define the nature of federal, state, and tribal criminal jurisdiction within Indian country.[1] *State v. Mathews*, 133 Idaho 300, 311, 986 P.2d 323, 334 (1999). Issues about the district court's jurisdiction are issues of law, over which we exercise free review. *State v. Rogers*, 140 Idaho 223, 227, 91 P.3d 1127, 1131 (2004).

Initially, we address the state's contention that we need not consider whether the state lacked subject matter jurisdiction over possession of a controlled substance because it acquired personal jurisdiction over Ambro by lawfully taking her into custody on the outstanding bench warrant. The state asserts that once the officer arrested Ambro, she ceased being an Indian in Indian country and, therefore, could be prosecuted for possession regardless of whether the state had subject matter jurisdiction to enforce controlled substance violations committed by Indians on reservations. We are unpersuaded.

■ In order to properly proceed, the court must acquire both personal and subject matter jurisdiction in a criminal case. *Rogers*, 140 Idaho at 228, 91 P.3d at 1132. Personal jurisdiction refers to a court's power to bring a person into its adjudicative process whereas subject matter jurisdiction refers to jurisdiction over the nature of the case and the type of relief sought. BLACK'S LAW DICTIONARY 870 (8th ed. 2004). Thus, without personal jurisdiction, the court has no person to hold accountable and, without

---

1. Indian country is defined by 18 U.S.C. § 1151 as follows:

"Indian country" ... means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

In this case, it is not in dispute that the traffic stop occurred on the Coeur d'Alene Indian Reservation, which is in Indian country.

subject matter jurisdiction, the court has no alleged crime to hold the person responsible for. *Rogers,* 140 Idaho at 228, 91 P.3d at 1132.

Whether Ambro had sufficient contact with the state to allow it to assume personal jurisdiction over her is not at issue in this case. Instead, we address the state's authority to prosecute an Indian for possession of a controlled substance in Indian country, while in a motor vehicle on a state highway.

## A. State Jurisdiction in Indian Country

■ In 1953, Congress enacted Public Law 280, which permitted states to assume jurisdiction over Indian affairs by affirmative legislative action. *See Washington v. Confederated Bands and Tribes of the Yakima Indian Nation,* 439 U.S. 463, 471–74, 99 S.Ct. 740, 746-48, 58 L.Ed.2d 740, 750-52 (1979) (providing detailed discussion of Public Law 280 and reproducing its text). In 1963, the Idaho legislature responded to Congress's grant of authority by enacting I.C. § 67–5101. *See* 1963 Idaho Sess. Laws, ch. 58, § 1. To establish state jurisdiction concerning a crime arising in Indian country, the prosecution has the burden to show that the criminal laws, which the state is seeking to enforce, fall within those matters described in Section 67–5101. *State v. Smith,* 124 Idaho 671, 672, 862 P.2d 1093, 1094 (Ct.App. 1993).

In pertinent part, Section 67–5101 provides:

The state of Idaho, in accordance with the provisions of ... (Public Law 280) hereby assumes and accepts jurisdiction for the civil and criminal enforcement of state laws and regulations concerning the following matters and purposes arising in Indian country located within this state, as Indian country is defined by title 18, United States Code 1151, and obligates and binds this state to the assumption thereof:

. . . .

G. Operation and management of motor vehicles upon highways and roads maintained by the county or state, or political subdivisions thereof.

The district court concluded this section provided the state with jurisdiction to prosecute Ambro for possession of a controlled substance because Ambro possessed the methamphetamine while driving a motor vehicle on a state maintained highway. Ambro argues that, because the offense she allegedly committed took place on the Coeur d'Alene Indian Reservation and did not concern the operation or management of motor vehicles, the state had no authority to prosecute her.

■ This Court exercises free review over the application and construction of statutes. *State v. Reyes,* 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar,* 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct.App.2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight,* 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar,* 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode,* 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give a statute an interpretation, which will not render it a nullity. *State v. Beard,* 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001).

■ In construing the state's assumption of jurisdiction in Indian country, we bear in mind that the federal government, and Congress in particular, possesses plenary authority over Indian affairs. *See Mathews,* 133 Idaho at 311, 986 P.2d at 334. There are two independent but related barriers to the assertion of state regulatory authority over tribal reservations and members—the exer-

cise of state authority may unlawfully infringe on the right of reservation Indians to make their own laws and be ruled by them or it may be preempted by federal law. *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142, 100 S.Ct. 2578, 2582-83, 65 L.Ed.2d 665, 671-72 (1980); *Mathews,* 133 Idaho at 313, 986 P.2d at 336. The two barriers are related because the right of tribal self-government is ultimately dependent on and subject to the broad power of Congress. *White Mountain,* 448 U.S. at 143, 100 S.Ct. at 2583, 65 L.Ed.2d at 672. The United States Supreme Court has established a trend away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal preemption. *See McClanahan v. State Tax Comm'n of Arizona,* 411 U.S. 164, 172, 93 S.Ct. 1257, 1262, 36 L.Ed.2d 129, 135-36 (1973). However, traditional notions of tribal self-government provide a backdrop against which vague or ambiguous laws must be measured. *White Mountain,* 448 U.S. at 143, 100 S.Ct. at 2583, 65 L.Ed.2d at 672; *Mathews,* 133 Idaho at 313, 986 P.2d at 336. Further, the unique historical origins of tribal sovereignty make it generally unhelpful to apply standards of pre-emption that have emerged in other areas of the law to a preemption analysis of laws regarding Indians. *White Mountain,* 448 U.S. at 143, 100 S.Ct. at 2583, 65 L.Ed.2d at 672.

 The law is well established that this Court is required to narrowly construe any statutes extending state jurisdiction over Indian country. *Barros,* 131 Idaho at 382, 957 P.2d at 1098. Such narrow construction is necessary so as to minimize erosion of tribal sovereignty. *State v. Smith,* 127 Idaho 771, 774, 906 P.2d 141, 144 (Ct.App.1995). When addressing issues of state jurisdiction in Indian country, we are guided by the canon of construction that state and federal legislation passed for the benefit of Indians is to be construed in the Indians' favor. *State v. McCormack,* 117 Idaho 1009, 1011, 793 P.2d 682, 684 (1990); *State v. Major,* 111 Idaho 410, 416, 725 P.2d 115, 121 (1986). Any ambiguous provisions in laws involving Indians must be interpreted to the Indians' benefit. *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 2403, 85 L.Ed.2d 753, 759 (1985); *McCormack,* 117

Idaho at 1012, 793 P.2d at 685. However, when a statute's language is broad enough to include a particular subject matter, an intent to exclude it from the statute's operation must be specifically expressed. *Barros,* 131 Idaho at 382, 957 P.2d at 1098; *Smith,* 127 Idaho at 774, 906 P.2d at 144.

In enacting Section 67–5101, the Idaho legislature also passed Section 67–5102, which requires tribal consent prior to additional assumption of state jurisdiction over activities occurring within Indian country. *See* 1963 Idaho Sess. Laws, ch. 58, § 2. Furthermore, Public Law 280 was repealed by the Civil Rights Acts of 1968 and replaced by 25 U.S.C. § 1321, which likewise requires the prior consent of an Indian tribe to create additional state jurisdiction. *Mathews,* 133 Idaho at 311, 986 P.2d at 334. Thus, in considering whether Section 67–5101(G) can be interpreted as granting state jurisdiction in the instant matter, we note that the legislature has restricted its authority to expand the state's jurisdiction for matters arising in Indian country unless the state secures the tribe's consent.

### B. Operation and Management of Motor Vehicles

 The district court concluded that the reference in Section 67–5101(G) to "operation and management of motor vehicles" is broad enough to include possession of a controlled substance by an Indian in Indian country who is driving on a highway maintained by the state. Pursuant to that section, the state has jurisdiction for enforcement and punishment of criminal offenses relating to the operation of motor vehicles upon highways maintained by the state within the boundaries of Indian reservations. *State v. Warden,* 127 Idaho 763, 765, 906 P.2d 133, 135 (1995); *McCormack,* 117 Idaho at 1013, 793 P.2d at 686. This authorization encompasses the power to enforce laws prohibiting driving under the influence (DUI). *See Barros,* 131 Idaho at 381–82, 957 P.2d at 1097–98. Allowing the state to enforce these laws furthers its policy of protecting the driving public and enforcing the safe operation of motor vehicles upon the highways of

the state. *See McCormack*, 117 Idaho at 1014, 793 P.2d at 687.

In *Smith*, the defendant left his vehicle at the scene of an accident, which occurred on an Indian reservation, and fled on foot. The defendant contended that, because the alleged offense was committed after the operation of his vehicle had ceased, Section 67–5101(G) did not authorize the state to prosecute him for leaving the scene of an accident. However, the statute that criminalized leaving the scene of an accident specifically applied to the driver of a vehicle and, thus, the wording of the statute made it apparent that the statute could be invoked only against a motor vehicle operator. *Smith*, 127 Idaho at 775, 906 P.2d at 145. Accordingly, the statute at issue defined an offense that arose out of the "operation and management" of a motor vehicle and came within the purview of Section 67–5101(G). *Id.* Similarly, in *McCormack*, the Idaho Supreme Court addressed whether the implied consent statute, which provided that a person in physical control of a vehicle is deemed to have given his or her consent to an evidentiary test for drugs or alcohol, can be enforced under Section 67–5101(G). The Court concluded that the implied consent statute was an integral part of the driving under the influence statute and was clearly part and parcel of the motor vehicle laws of this state. *McCormack*, 117 Idaho at 1014, 793 P.2d at 687.

According to the state, Section 67–5101(G) authorizes it to prosecute any crime committed by an Indian within the boundaries of an Indian reservation, so long as the crime was committed while the Indian was riding in a vehicle on a state maintained highway. The state contends that where police discover an Indian in possession of contraband, whether stolen property or a controlled substance, the crime concerns motor vehicles because the Indian possesses the contraband while being an occupant of a motor vehicle. Thus, under the state's proposed interpretation, if an Indian traveling as a passenger was found in possession of a bracelet, which was stolen from an Indian on the Indian reservation, the state could prosecute that Indian for grand theft by possession, provided that the bracelet was discovered during a traffic stop on a state maintained highway. Such an interpretation of Section 67–5101(G) subsumes state jurisdiction over *all* crimes, rendering the statute's words indicating the state accepted jurisdiction for enforcement of state laws concerning the *operation* and *management* of motor vehicles without significance.

In *McCormack* and *Smith*, the statutes defining the offenses at issue referenced motor vehicles. When prosecuting crimes such as leaving the scene of an accident or DUI, the state must prove that the person was driving or in physical control of a vehicle. *See* I.C. §§ 18–8004, 18–8007. In contrast, the statute criminalizing possession of controlled substance contains no reference to motor vehicles. *See* I.C. § 37–2732(c). In arguing that it had jurisdiction in the instant case, the state asserts that there are some drug laws tied to public roads, such as driving under the influence of a controlled substance or trafficking by bringing drugs into the state. However, Ambro was not charged under those laws. The possession statute at issue has no connection to the "operation and management" of motor vehicles. Because Section 67–5101(G) refers to the enforcement of "state laws" concerning the "operation and management of motor vehicles," we must look to the law the state is seeking to enforce and not to the facts of an individual case when determining whether a particular offense falls within the purview of that section.

The state also urges that enforcement of drug offenses is directly related to motor vehicle laws because one of the most common methods of controlling illegal drugs is through traffic stops. The state contends that, because many drug cases begin as traffic stops, enforcing controlled substance laws is a component of motor vehicle management. However, although the state's argument may support a conclusion that traffic laws are an essential part of drug law enforcement, it does not prove the opposite—that drug laws are a basic component of traffic enforcement. We conclude that Section 67–5101(G)'s plain language is not broad enough to encompass enforcement of controlled substance laws that do not involve the operation or management of motor vehicles as an element of the offense.

Further, we must narrowly construe Section 67–5101(G) so as to minimize erosion of tribal sovereignty. Coeur d'Alene Tribal Code, ch. 16, § 16–6.01 (2005), which addresses controlled substances, adopts the Uniform Controlled Substance Act, I.C. §§ 37–2701 to 37–2751, for the purpose of defining drug offenses. The tribal code thereafter also sets forth the maximum sentence for any offense contained in the Act. *See* Coeur d'Alene Tribal Code, ch. 16, § 16–6.01 (2005). Therefore, the Coeur d'Alene Tribe has clearly exercised its right to self-government in the area of controlled substances.

The state finally contends that it would have jurisdiction to prosecute Ambro for possession of drugs that were found as a result of a traffic stop if the drugs had not been discovered until Ambro arrived at the jail. Notwithstanding the limitations on state criminal jurisdiction over crimes committed within Indian country, a state possesses criminal jurisdiction over Indians who violate state laws outside of reservation boundaries. *Mathews*, 133 Idaho at 312, 986 P.2d at 335. Therefore, the state asserts that the timing of when drugs are found on the person should not determine which sovereign prosecutes the individual involved. Here, however, the methamphetamine was found on Ambro's person while she was within the boundaries of the Coeur d'Alene Indian Reservation, and we do not speculate whether the state would have had jurisdiction if the methamphetamine had not been discovered until Ambro had been transported to a jail outside of reservation boundaries, as that is not the issue before us.

### III.

### CONCLUSION

We reject the state's position that, once Ambro was lawfully taken into custody, she ceased being an Indian in Indian country. Indian country includes all land within the limits of any Indian reservation, including rights-of-way running through the reservation. 18 U.S.C. § 1151. Section 67–5101(G) grants the state certain jurisdiction on state maintained highways within Indian country but does not alter the status of those highways as being located within Indian country. That the officer lawfully arrested Ambro did not transform the physical location of the arrest into nonreservation land.

Giving the words of Section 67–5101(G) their plain and rational meaning, we conclude that, in order for that section to confer state jurisdiction over an offense committed by an Indian on a reservation, the offense must concern the "operation and management" of motor vehicles on highways and roads maintained by the county or state. Possession of a controlled substance does not concern the operation or management of motor vehicles. Accordingly, the state did not have subject matter jurisdiction to prosecute Ambro for the methamphetamine, which she possessed on the reservation, regardless of whether it was found during a traffic stop on a state maintained highway. Prosecution must lie with the federal or tribal court.

The district court erred in finding that the state had jurisdiction to prosecute Ambro and in denying her motion to dismiss. Therefore, Ambro's judgment of conviction for possession of a controlled substance is vacated.

Judge LANSING and Judge GUTIERREZ concur.