185 P.3d 634 (2008)
STATE of Washington, Appellant,
v.
William Peter PINK, a/k/a William Peter Pink Bailey, Respondent.
No. 36485-9-II.
Court of Appeals of Washington, Division 2.
June 3, 2008.
*635 Gerald R. Fuller, Grays Harbor Co. Pros. Ofc., Montesano, WA, for Appellant.
Peter B. Tiller, The Tiller Law Firm, Centralia, WA, for Respondent.
Rickie Wayne Armstrong, Quinault Indian Nation, Taholah, WA, Amicus Curiae on behalf of Quinault Indian Reservation.
QUINN-BRINTNALL, J.
¶ 1 In December 2006, Grays Harbor County sheriff deputies arrested William Peter Pink (a/k/a William Peter Pink Bailey) on an outstanding warrant. At the time of his arrest, Pink was a passenger in a car stopped for a traffic violation on a public road within the boundaries of the Quinault Indian Reservation. The State charged Pink with unlawful possession of a firearm discovered during a search of the vehicle incident to the arrest.
¶ 2 Pink is an enrolled member of the Quinault Tribe, and he filed a motion to dismiss the unlawful firearm charge claiming that the Grays Harbor County court lacked jurisdiction to prosecute him for this offense which occurred wholly within the Quinault Reservation. The trial court granted Pink's motion; the State appeals.
¶ 3 We hold that the Quinault Tribe's grant of a highway easement to the State did not terminate the Quinault Tribe's interest in the land over which the highway runs and that the State did not have jurisdiction to prosecute Pink for unlawfully possessing a firearm on the road running through the tribal land. Accordingly, we affirm.

FACTS
¶ 4 On December 10, 2006, Grays Harbor County sheriff deputies stopped a vehicle bearing Quinault Tribe license plates traveling on Washington State Highway Route (SR) 109, just south of the Moclips highway. That portion of SR 109 lies within the geographical borders of the Quinault Indian Reservation. The Treaty of Olympia created the Quinault Indian Reservation, which was ratified by Congress in 1859. Quinault Tribe of Indians v. Gallagher, 368 F.2d 648, 651 (9th Cir.1966), cert. denied, 387 U.S. 907, 87 S.Ct. 1684, 18 L.Ed.2d 626 (1967). This reservation is located on the Pacific coast near Grays Harbor in Western Washington; the boundaries were confirmed on November 4, 1873. Quinault Tribe, 368 F.2d at 651.
¶ 5 Pink, an enrolled member of the Quinault Tribe, was a passenger in a vehicle that had been stopped for having defective equipment: a defective muffler and cracked windshield. During the stop, deputies asked Pink to identify himself and used the information to run a warrants check. After discovering an outstanding warrant, the deputies arrested Pink. The search incident to his arrest revealed a .270 caliber rifle cartridge in Pink's pocket and a .270 caliber rifle in the vehicle. Pink acknowledged that the rifle belonged to him and stated that he was a tribal member with hunting rights. The deputies did not contact the Quinault Tribe's law enforcement agency to request assistance or seek the Quinault Tribe's approval to exercise general criminal jurisdiction over Pink.
¶ 6 Based on these events, the State charged Pink with second degree unlawful possession of a firearm. Pink, a convicted felon,[1] is prohibited from knowingly possessing *636 or owning firearms. RCW 9.41.040.[2] Pink moved for dismissal of the charges, arguing a lack of State criminal jurisdiction. For purposes of the pretrial motion, the parties presented stipulated facts.[3] The trial court granted the motion.
¶ 7 Following the State's appeal, the Quinault Tribe filed a motion requesting permission to intervene[4] or, in the alternative, file an amicus brief. We granted the Quinault Tribe's alternative request and accepted its amicus brief. In its brief, the Quinault Tribe asserts that by charging Pink with unlawfully possessing the firearm on tribal land, the State intruded on its criminal jurisdiction and ignored its sovereignty and authority to govern its own people and property.
¶ 8 In this case, we address whether the State has jurisdiction to prosecute an enrolled tribal member for a violation of Washington State law alleged to have been committed while the tribal member was a passenger on SR 109 within the Quinault Indian Reservation. We hold that, because the alleged violation is unrelated to operating a motor vehicle, the State lacks jurisdiction.

ANALYSIS
State's Criminal Jurisdiction
¶ 9 Generally, the superior court has original jurisdiction in all criminal felony cases and in all proceedings in which jurisdiction has not been vested exclusively in some other court. Wash. Const., art. IV, § 6. The federal courts have exclusive jurisdiction to try an enrolled Native American for the alleged commission, in "Indian country," of most major crimes. See White v. Schneckloth, 56 Wash.2d 173, 174, 351 P.2d 919 (1960) (federal courts have exclusive jurisdiction to try tribal members of a crime enumerated in the Ten Major Crimes Act, 18 U.S.C. § 1153).
¶ 10 The State argues that, because the crime was committed while Pink was on SR 109, it had jurisdiction to prosecute him for it even though he is an enrolled member of the Quinault Tribe. We disagree.
¶ 11 We begin with the proposition that the State cannot acquire jurisdiction either by estoppel or by stipulation. State v. Boyd, 109 Wash.App. 244, 249, 34 P.3d 912 (2001), review denied, 146 Wash.2d 1012, 51 P.3d 86 (2002).
¶ 12 When the situs of the crime is undisputed, we decide the issue of territorial jurisdiction as a question of law. State v. Squally, 132 Wash.2d 333, 340, 937 P.2d 1069 (1997). The parties stipulated that Pink was charged with unlawfully possessing a firearm on SR 109 within the Quinault Reservation boundaries: thus, the trial court's determination of whether it had personal jurisdiction to hear the charges against Pink is a question of law that we review de novo. Squally, 132 Wash.2d at 340-41, 937 P.2d 1069 (citing Lewis v. Bours, 119 Wash.2d 667, 669, 835 P.2d 221 (1992); Joy v. Kaiser Aluminum & Chem. Corp., 62 Wash.App. 909, 911, 816 P.2d 90 (1991)).
¶ 13 Here, the parties do not dispute the locus of the alleged criminal acts; instead, they disagree on whether the State possesses general criminal jurisdiction over the lands attached to SR 109 to which the Quinault Tribe granted the State an easement.
A. Public Law 280 and RCW 37.12.010
¶ 14 In 1953, Congress enacted federal legislation authorizing states to impose concurrent state jurisdiction in Indian country with or without tribal consent. Public Law 280, Pub.L. No. 85-280, 67 Stat. 588 (1953). The Washington Legislature, however, elected to *637 extend civil and criminal jurisdiction only to those reservations requesting that it do so. Ch. 37.12 RCW; Washington v. Confederated Bands & Tribes of Yakima Indian Nation, 439 U.S. 463, 471-72, 99 S.Ct. 740, 58 L.Ed.2d 740 (1979); see Cross v. Comm'r of Internal Revenue, 126 Wash.2d 43, 46-49, 891 P.2d 26 (1995) (discussing the history of Public Law 280 (codified as amended at 18 U.S.C. § 1162; 25 U.S.C. §§ 1321-1326; 28 U.S.C. § 1360)).
¶ 15 But in 1963, the Washington Legislature extended its jurisdiction, without tribal consent, to include state criminal and civil jurisdiction over all non-Indians in Indian country, Indians on fee-patented land on reservations, and Indians on tribally-owned or individually allotted lands held in trust by the federal government. RCW 37.12.010; Quinault Tribe, 368 F.2d at 651-52; State v. Sohappy, 110 Wash.2d 907, 909, 757 P.2d 509 (1988). The legislature did not assert general jurisdiction but set forth eight categories of cases over which it would assert jurisdiction. RCW 37.12.010(1)-(8). These excepted categories include: (1) compulsory school attendance; (2) public assistance; (3) domestic relations; (4) mental illness; (5) juvenile delinquency; (6) adoption proceedings; (7) dependent children; and (8) operation of motor vehicles on the public streets, alleys, roads, and highways. RCW 37.12.010(1)-(8).[5]
¶ 16 In 1968, Congress narrowed the states' powers under Public Law 280 by enacting the Indian Civil Rights Act of 1968, 25 U.S.C. § 1321. Under the act, a state may not assume criminal jurisdiction without the consent of the tribe. This jurisdictional limitation was not retroactive; jurisdiction a state assumed before the 1968 act was not displaced. State v. Hoffman, 116 Wash.2d 51, 68-69, 804 P.2d 577 (1991).
¶ 17 On May 20, 1957, the Quinault Tribe granted the State a right-of-way easement across the portion of SR 109 within the reservation boundaries. 25 U.S.C. §§ 323-328. A map documenting the easement was certified on February 8, 1959.
¶ 18 In addition, on April 22, 1958, the Quinault Indian Tribal Council enacted a resolution requesting that the State of Washington extend its criminal and civil jurisdiction to include the Quinault Tribe and Reservation. Quinault Tribe, 368 F.2d at 652. On May 15, 1958, the State governor issued a proclamation extending State jurisdiction to the reservation effective July 14, 1958. RCW 37.12.020; Quinault Tribe, 368 F.2d at 652.
¶ 19 But in 1965, the Quinault Tribe petitioned for retrocession of State jurisdiction and, in 1969, the United States accepted the Quinault Tribe's request. See Comenout v. Burdman, 84 Wash.2d 192, 197-98, 525 P.2d 217 (1974) (detailing the history of State jurisdiction over the Quinault Tribe; jurisdiction exercised by the State over the Quinault Tribe under RCW 37.12.010-.060 was excepted from the retrocession of jurisdiction to the United States), dismissed, 420 U.S. 915, 95 S.Ct. 1108, 43 L.Ed.2d 387 (1975); see also 25 U.S.C. § 1323 (the United States Secretary of the Interior is authorized to accept a retrocession by any state of all or any measure of the criminal jurisdiction acquired by a state). Under these laws, except for the enumerated categories listed in RCW 37.12.010, the State lacks criminal jurisdiction over members of the Quinault Tribe while on tribal lands within the reservation. RCW 37.12.010; State v. Cooper, 130 Wash.2d 770, 774, 928 P.2d 406 (1996).
B. Tribal Lands and Right-of-Way Easements
¶ 20 Generally, the State's criminal jurisdiction extends across the geographical boundary of the reservation. RCW 37.12.010. Except for the eight categories noted above, however, the State has no jurisdiction over enrolled tribal members for matters occurring on their "tribal lands or allotted lands." RCW 37.12.010; Cooper, 130 Wash.2d at 775-76, 928 P.2d 406.
¶ 21 When land is tribal trust land, title is held by the federal government in trust for the tribe as a community. When the land is allotted land, title is held by *638 individual tribal members in trust for the community subject to restrictions against alienation by the holder. Somday v. Rhay, 67 Wash.2d 180, 184, 406 P.2d 931 (1965). The tribe has no jurisdiction over land owned by the United States, which holds title to the land in fee simple. Somday, 67 Wash.2d at 184, 406 P.2d 931. In addition, lands held in fee simple by the State are not lands "held in trust by the United States"; and the State has jurisdiction over fee lands it owns within a reservation. RCW 37.12.010; Yakima Indian Nation, 439 U.S. at 475, 99 S.Ct. 740.
¶ 22 But in this case, the Quinault Tribe did not sell the State the land that runs under SR 109. Instead, it granted the State an easement to "build and maintain SR109 over this portion of the Quinault Reservation." Clerk's Papers at 22. The State does not present any evidence showing that the Quinault Tribe ceded any interest in this land to the State beyond granting the highway easement. Nevertheless, the State asserts that our Supreme Court's holding in Somday supports its argument that the easement grants it jurisdiction to prosecute all crimes committed on SR 109. We disagree with this argument because, in Somday, the tribe granted the State a fee simple patent, not a right-of-way easement. 67 Wash.2d at 180, 406 P.2d 931.
¶ 23 Somday, a Colville Tribe enrolled member, challenged his guilty plea to a second degree assault, which took place within the boundaries of the Colville Indian Reservation on the right-of-way of a State highway in Elmer City, Washington. Somday, 67 Wash.2d at 180-81, 406 P.2d 931. In addition to the voluntariness of his plea, Somday also challenged his arrest and incarceration for want of jurisdiction. Somday asserted that the trial court lacked jurisdiction because the highway right-of-way was located on tribal or allotted land. Somday, 67 Wash.2d at 181, 406 P.2d 931. Our Supreme Court held that the tribe had no remaining interest in the highway where the offense was committed because it had included the right-of-way in the 1935 fee simple grant to the State. The land on which Somday had committed his assault was, therefore, State land, not "tribal lands or allotted lands" under RCW 37.12.010. Somday, 67 Wash.2d at 184, 406 P.2d 931.
¶ 24 Here, unlike the Colville Tribe's grant of a fee interest in Somday, the Quinault Tribe only granted the State a right-of-way easement. Thus, here, the Quinault Tribe retained its ownership interest in its land. "An easement is an interest which one person has in the land of another. It is a nonpossessory interest in land which is in possession of another." Butler v. Craft Eng. Constr. Co., 67 Wash.App. 684, 697, 843 P.2d 1071 (1992) (citing Restatement of Property § 450, comments a, e (1944)). We hold that the Quinault Tribe did not transfer ownership of the land to the State over which the State built and maintains SR 109. Olympia v. Palzer, 107 Wash.2d 225, 229, 728 P.2d 135 (1986).
¶ 25 In this case, the State asserts that, because it has "sole responsibility for the highway's construction, maintenance, and repair," the Quinault Tribe, "[i]n essence, . . . has relinquished all control over the public highway to the State." Appellant's Br. at 6. This circumstance, it argues, makes the land equivalent non-Indian fee land.[6] Again, we disagree.
¶ 26 "Indian country" is defined as all land within the limit of any Indian reservation, "notwithstanding the issuance of any patent, and, including rights-of-way." 18 U.S.C. § 1151 (emphasis added). See, e.g., DeCoteau v. Dist. County Court for the Tenth Judicial Dist., 420 U.S. 425, 427 n. 2, 95 S.Ct. 1082, 43 L.Ed.2d 300 (1975) (land within reservation is subject to tribal and federal jurisdiction including rights-of-way); Confederated *639 Tribes of Colville Reservation v. Washington, 938 F.2d 146 (9th Cir.1991) (public roads are within and, therefore, part of the reservation); Ortiz-Barraza v. United States, 512 F.2d 1176, 1180 (9th Cir.1975) ("Rights of way running through a reservation remain part of the reservation and within the territorial jurisdiction of the tribal police.") (citing Gourneau v. Smith, 207 N.W.2d 256 (N.D.1973)); Enriquez v. Superior Court, 115 Ariz. 342, 565 P.2d 522 (Ct. App.1977) (granting of easement for public highway running through reservation does not alter status as "Indian country").
¶ 27 In this case, nothing in the statute or the easement suggests any intention that the State assume or the Quinault Tribe grant criminal jurisdiction over tribal members on the highway. RCW 37.12.010. Moreover, the State has not shown that the Quinault Tribe relinquished its interest in the land. Accordingly, the State's public roads within the reservation, including SR 109, remain part of the Quinault Reservation and, absent the exceptions set out in RCW 37.12.010(1)-(8), the Quinault Tribe continues to have jurisdiction to prosecute crimes committed on this land by tribal members.
¶ 28 State v. Ambro, 142 Idaho 77, 123 P.3d 710 (Ct.App.2005), illustrates our holding that the State lacks general criminal jurisdiction over the section of SR 109 that runs through the reservation. Ambro addresses an Idaho statutory exception, Idaho Code (I.C.) § 67-5101(G), similar to Washington's statutory exception under RCW 37.12.010(8).
¶ 29 In Ambro, a tribal officer stopped Ambro, an enrolled member of the Coeur d'Alene Tribe, for an alleged traffic infraction within the Coeur d'Alene Indian Reservation on a highway maintained by the State of Idaho. Ambro, 142 Idaho at 78, 123 P.3d 710. A county sheriff's officer then arrested Ambro on an outstanding bench warrant for an unrelated case. Ambro, 142 Idaho at 78, 123 P.3d 710. While searching Ambro incident to her arrest, the sheriff's officer discovered methamphetamine. The Ambro court held that Idaho lacked subject matter jurisdiction to prosecute Ambro for the controlled substance she possessed on the reservation, regardless of whether it was found during a traffic stop or on a state-maintained highway because, for the state to have criminal jurisdiction under Idaho's statutory exception, I.C. § 67-5101(G), the crime must concern "the operation and management" of motor vehicles on highways and roads maintained by the county or state. 142 Idaho at 82, 123 P.3d 710. And on the facts of the Ambro case, possession of a controlled substance did not concern the operation or management of motor vehicles. 142 Idaho at 83, 123 P.3d 710.[7]
¶ 30 Similarly, here, Pink's alleged firearms violation did not concern the operation of a vehicle. See Ambro, 142 Idaho at 83, 123 P.3d 710. As discussed above, RCW 37.12.010 specifically provides for the State's assumption of jurisdiction over tribal members on reservations for matters involving the "[o]peration of motor vehicles upon the public streets, alleys, roads and highways." RCW 37.12.010(8). But here, Pink was not operating[8] a motor vehicle. He was a passenger in a motor vehicle when the deputies arrested him. Thus, the exception of RCW 37.12.010(8), which gives the State jurisdiction over crimes concerning the operation of motor vehicles, does not apply.[9]
*640 ¶ 31 We hold that, because he did not commit any traffic violations involving the operation of a motor vehicle, the State lacked the jurisdiction necessary to prosecute Pink, an enrolled tribal member, for allegedly unlawfully possessing a firearm in violation of RCW 9.41.040 on SR 109 within the Quinault Tribe lands.[10]
¶ 32 Accordingly, we affirm the trial court's order dismissing the charges.
We concur: VAN DEREN, A.C.J., and PENOYAR, J.
NOTES
[1] Pink's prior felony convictions include a third degree assault (Grays Harbor County Cause No. 03-1-200-6).
[2] RCW 9.41.040(1)(a) states:

A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter.
[3] Because the trial court did not take any testimony and the parties did not dispute the facts for the purposes of the motion, no report of proceedings was created for our review in this case.
[4] The Quinault Tribe did not intervene at the trial court.
[5] The United States Supreme Court held that RCW 37.12.010 is constitutional and complies with Public Law 280. Yakima Indian Nation, 439 U.S. at 473-74, 99 S.Ct. 740.
[6] To further support its argument that right-of-way is not "tribal lands or allotted lands," the State cites Strate v. A-1 Contractors, 520 U.S. 438, 117 S.Ct. 1404, 137 L.Ed.2d 661 (1997), and (2) Big Horn County Electric Cooperative, Inc. v. Adams, 219 F.3d 944 (9th Cir.2000). But neither case addresses the State's general criminal jurisdiction. The State's reliance is misplaced.

In Strate, the issue pertained to a question of tribal jurisdiction over the conduct of nonmembers on a public highway within the boundary of the reservation. In Big Horn, the Ninth Circuit of the United States Court of Appeals addressed whether the Crow Tribe had regulatory jurisdiction to tax a non-member utility located on congressionally-granted rights-of-way land.
[7] We note that Ambro was not stopped for driving under the influence. Ambro, 142 Idaho at 82, 123 P.3d 710.
[8] An "operator or driver" is "every person who drives or is in actual physical control of a vehicle." RCW 46.04.370. See Tyrrell v. Farmers Ins. Co. of Washington, 140 Wash.2d 129, 137, 994 P.2d 833 (2000) ("A motor vehicle is being operated as a motor vehicle when it is being driven or when it is stopped while being driven.").
[9] The State implies that RCW 37.12.010 is ambiguous because "[l]ogically, it makes no sense to parse out different parts of a single event." Br. of Appellant at 8. This argument disregards the long standing federal and state constitutional requirements requiring the parsing out of a single event in the context of a traffic stop. Delaware v. Prouse, 440 U.S. 648, 654, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); State v. Cole, 73 Wash.App. 844, 871 P.2d 656, review denied, 125 Wash.2d 1003, 886 P.2d 1134 (1994). A valid traffic stop for a traffic infraction does not automatically give the officer probable cause to arrest the passenger. See Cole, 73 Wash.App. 844, 871 P.2d 656.
[10] The State has not complied with federal statutes that might allow it to assume general criminal jurisdiction. The statutory method provides:

The consent of the United States is hereby given to any State not having jurisdiction over criminal offenses committed by or against Indians in the areas of Indian country situated within such State to assume, with the consent of the Indian tribe occupying the particular Indian country or part thereof which could be affected by such assumption, such measure of jurisdiction over any or all of such offenses committed within such Indian country or any part thereof as may be determined by such State to the same extent that such State has jurisdiction over any such offense committed elsewhere within the State, and the criminal laws of such State shall have the same force and effect within such Indian country or part thereof as they have elsewhere within that State.
25 U.S.C. § 1321(a) (emphasis added).