248 P.3d 1095 (2011)
STATE of Washington, Respondent,
v.
Elon Alex YALLUP, Appellant.
No. 28040-3-III.
Court of Appeals of Washington, Division 3.
March 10, 2011.
*1096 Andrea Burkhart, Burkhart & Burkhart PLLC, Walla Walla, WA, for Appellant.
Kevin Gregory Eilmes, Prosecuting Attorney's Office, Yakima, WA, for Respondent.
KORSMO, A.C.J.
¶ 1 Elon Yallup challenges his conviction for felony driving while under the influence (DUI), arguing that the State cannot enforce the implied consent laws against an enrolled member of the Yakama Nation driving on state highways on the reservation. We conclude that the implied consent statute is primarily a criminal statute rather than a civil regulatory statute as that distinction is applied by the United States Supreme Court in cases interpreting Public Law 280.

FACTS
¶ 2 Mr. Yallup was observed on September 8, 2007, driving his car off the road and into a canal located on the Yakama Indian Reservation. Emergency crews rescued him and took him to the Toppenish Community Hospital.[1] *1097 Washington State Patrol Trooper Russell Sharpe contacted him at the hospital. Mr. Yallup did not respond to the trooper, who arrested him and had blood drawn pursuant to Washington's implied consent statute.
¶ 3 Mr. Yallup was charged in the Yakima County Superior Court with one count of felony DUI, driving without an interlock device, and second degree driving while license suspended or revoked. He moved to suppress the results of the blood alcohol test on the basis that the implied consent statute could not be applied to an enrolled member of the Yakama Nation who was driving on the reservation. The motion was denied.
¶ 4 The matter proceeded to jury trial. The blood alcohol test, showing a .27 percent reading, was admitted. The parties also entered a stipulation for the jury that: (1) Mr. Yallup's driver's license was suspended in the second degree and he was not "eligible for reinstatement due to a prior conviction of RCW 46.61.502 or 46.61.504" and (2) he "is required by the Department of Licensing to operate only a motor vehicle with an ignition interlock device." Clerk's Papers (CP) at 55. The stipulation expressly left open the question of whether or not Mr. Yallup was driving the vehicle when it crashed. Defense counsel argued the case on the theory that Mr. Yallup was not the driver.
¶ 5 The jury found Mr. Yallup guilty on all three counts. The trial court used an offender score of seven when scoring the felony DUI count and imposed a standard range sentence of 57 months on that count. A term of 9-18 months of community custody was also imposed. Mr. Yallup then timely appealed to this court.

ANALYSIS
¶ 6 The primary issue in this case is whether the implied consent statute[2] cannot be applied to Mr. Yallup because of either Public Law 280 or the treaty with the Yakama Nation. Mr. Yallup also argues that the trial court used the wrong offender score and lacked authority to impose community custody. We will address those arguments in the order listed.
¶ 7 Public Law 280. The application of state laws to Native Americans in "Indian country"[3] raises sensitive questions of sovereignty. Reservations are subject to federal law, but wholesale application of state law would diminish tribal autonomy. Instead, state laws apply only to the extent authorized by Congress. California v. Cabazon Band of Mission Indians, 480 U.S. 202, 207, 107 S.Ct. 1083, 94 L.Ed.2d 244 (1987).
¶ 8 Public Law 280 authorized the states to assert jurisdiction over reservations within their boundaries. McCrea v. Denison, 76 Wash.App. 395, 398, 885 P.2d 856 (1994). Washington's response to Public Law 280 is found in chapter 37.12 RCW. Washington asserted civil and criminal jurisdiction over Indians on the reservation in eight specified areas. RCW 37.12.010. The one area in question here is the assertion of jurisdiction over the "Operation of motor vehicles upon the public streets, alleys, roads and highways." RCW 37.12.010(8) (partial).
¶ 9 In Cabazon Band, the United States Supreme Court addressed California's attempt to regulate tribal high-stakes bingo operations on two reservations. 480 U.S. at *1098 204-206, 107 S.Ct. 1083. Some forms of gambling were permitted in California subject to various regulations; criminal penalties were included in the regulatory scheme. Id. at 209-211, 107 S.Ct. 1083. Adopting an approach used by the Ninth Circuit in earlier California tribal gambling cases, the Cabazon Band majority distinguished criminal statutes from regulatory statutes.[4]Id. at 209-210, 107 S.Ct. 1083. If the conduct was generally prohibited, it was criminal in nature; if the conduct was permitted, but regulated, it was considered civil in nature. Id. The court concluded that gambling was a regulated industry rather than a prohibited endeavor and declined to permit California to regulate the bingo activities. Id. at 210-212, 107 S.Ct. 1083.
¶ 10 Seizing upon the Cabazon Band analysis, Mr. Yallup argues that because driving is generally permitted, the licensing of drivers is a regulatory scheme rather than a criminal prohibition. He therefore concludes that the State lacks authority to require licenses for tribal members driving on the reservation. He further argues that the license enforcement regime, including the implied consent law, is also regulatory in nature and cannot be enforced against him. Because of that, he concludes that his blood alcohol test was improperly admitted against him at trial.
¶ 11 There are at least three difficulties with his argument. The initial difficulty involves his claim that Cabazon Band is even applicable to this case. That problem arises because Washington and California are not similarly situated under Public Law 280. California was one of five states granted jurisdiction by that legislation over some or all of the reservations within their boundaries. Cabazon Band, 480 U.S. at 207, 107 S.Ct. 1083. Those five "mandatory" states were granted broad criminal law authority, but very limited civil law authority over reservation lands because civil authority was limited to actions between private parties.[5]Id. In contrast, Washington and the other states were granted permissive civil and criminal authority over reservations within their boundaries "to assume jurisdiction at such time and in such manner" as the State chose. Pub.L. 280 § 7, 67 Stat. at 590. The extent of the assertion of state jurisdiction varies significantly across the country. Washington, however, asserted its full civil and criminal jurisdiction in eight specific areas.[6] RCW 37.12.010. Thus, the Cabazon Band test, which distinguishes between criminal and civil jurisdiction, does not appear to be applicable.[7] The actual question is whether Washington has asserted jurisdiction rather than what type of jurisdiction it has asserted.
¶ 12 This question was presented by the decision in State v. Pink, 144 Wash.App. 945, 185 P.3d 634 (2008). There the defendant, a *1099 tribal member, was charged with unlawful possession of a firearm discovered in a car during a traffic stop on a state highway running through a reservation. Id. at 947-948, 185 P.3d 634. The charges were dismissed because the State lacked authority to prosecute the crime since it did not involve the operation of a motor vehicle on a public highway under RCW 37.12.010(8). Id. at 949, 956, 185 P.3d 634. If Washington had a broad grant of general criminal jurisdiction, as appears to be the case in California, the issue would not have even arisen. The Cabazon Band analysis simply is not apropos here.
¶ 13 The second difficulty with Mr. Yallup's argument involves the level of generality at which he argues. The question here is not driving and driver's licensing in general. The specific question involves the Washington's impaired driving statutes and their application to Mr. Yallup's conduct on September 8, 2007. Addressing the implied consent statute as an adjunct of a licensing scheme rather than on its own merits does not resolve the fundamental question of what type of statute it is.
¶ 14 The third difficulty we have concerns the merits of Mr. Yallup's claim. Even if we assume that Cabazon Band is applicable to this case because Washington has greater criminal authority over reservation roads than it has civil authority, there is no question that the challenged statutes are criminal in nature. It is a crime to drive in the state of Washington without a valid driver's license. RCW 46.20.005.[8] It is a crime in this state to drive when one's license or privilege has been suspended or revoked. RCW 46.20.342. It is a gross misdemeanor crime to drive, or be in physical control of a vehicle, when one is impaired by alcohol or drugs. RCW 46.61.502, .504. In some instances, impaired driving or physical control is a felony. RCW 46.61.502(6), .504(6), .5055(4). As a result of impaired driving convictions, the driver's license is suspended and an ignition interlock may be required for future driving. RCW 46.61.5055(5), (6), (9).
¶ 15 The implied consent statute, RCW 46.20.308, was adopted to "control or reduce the drunk-driver hazard to highway safety." State v. Moore, 79 Wash.2d 51, 53, 483 P.2d 630 (1971). It operates by recognizing that drivers have consented to alcohol testing by the operation of a motor vehicle within the state. RCW 46.20.308(1). Consent can be withdrawn in some circumstances, but the license to drive will be suspended when consent is withdrawn. RCW 46.20.308(2)(a). In the event that consent is withdrawn, evidence of the refusal to take the test "may be used in a criminal trial." RCW 46.20.308(2)(b). The statute was upheld in Moore against various constitutional challenges, with the court recognizing the statute "having as its purpose the reduction of traffic carnage occasioned by the inebriated driver." 79 Wash.2d at 58, 483 P.2d 630.
¶ 16 The clear focus of the implied consent statute is gathering evidence for prosecuting criminal cases of suspected impaired driving. Statutes that authorize evidence collection in support of prosecuting criminal cases are properly classified as criminal in nature. To the extent that the difference between criminal and civil jurisdiction even matters under RCW 37.12.010(8), we have no trouble categorizing the implied consent statute as criminal.[9]
¶ 17 Our courts have previously recognized that Washington has validly asserted jurisdiction over criminal driving offenses falling within the purview of RCW 37.12.010(8). State v. Abrahamson, 157 Wash.App. 672, 238 P.3d 533 (2010) (attempting to elude, driving while under the influence, and driving while license revoked in the first degree); Pink, 144 Wash.App. at 955-956, 185 P.3d 634 (a passenger's unlawful possession of a firearm did not constitute a driving offense). Washington's implied consent statute falls within the criminal jurisdiction of RCW 37.12.010(8). The State had authority under *1100 that provision to prosecute Mr. Yallup for felony DUI, driving without an interlock device, and second degree driving while license suspended or revoked.
¶ 18 Public Law 280 did not bar the criminal prosecution of this case.
¶ 19 Treaty Protections. Mr. Yallup also argues that the implied consent statute cannot be applied to him because it runs afoul of the treaty with the Yakama Nation. See Treaty with the Yakamas, 12 Stat. 951 (1855). In particular, he alleges that it contravenes the provision guaranteeing freedom to travel:

And provided, That, if necessary for the public convenience, roads may be run through the said reservation; and on the other hand, the right of way, with free access from the same to the nearest public highway, is secured to them; as also the right, in common with citizens of the United States, to travel upon all public highways.
Id. at 952-953 (Art. III).
¶ 20 Indian treaties are construed as the Indians would have naturally understood the language to mean at the time the treaty was entered into. Minnesota v. Mille Lacs Band of Chippewa Indians, 526 U.S. 172, 196, 119 S.Ct. 1187, 143 L.Ed.2d 270 (1999). Any ambiguities must be resolved in the Indian's favor. Id. at 200, 119 S.Ct. 1187.
¶ 21 Mr. Yallup relies upon two commercial cases that have interpreted the freedom to travel provision of this treaty. Yakama Indian Nation v. Flores, 955 F.Supp. 1229, 1233 (E.D.Wash.1997), aff'd sub nom. Cree v. Flores, 157 F.3d 762 (9th Cir.1998), required Washington to apportion licensing and registration fees on logging trucks owned by tribal members because nonapportioned fees restricted the ability to bring goods to market, a right that had been understood at the time of the treaty. Id. at 1259-1260. However, the State could impose registration and identification requirements as long as they were not accompanied by fees. Id. at 1257. In United States v. Smiskin, 487 F.3d 1260 (9th Cir.2007), this provision was construed to exempt Yakama tribal members from the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2342(a), because Washington's notice requirement interfered with their ability to bring goods to market. Id. at 1265.
¶ 22 These commercially-oriented cases are not particularly helpful as they both turned on the treaty right to bring tribal goods to market. More fundamentally, the right to travel assured by the treaty is not the same as the right to drive. Washington courts have distinguished between the constitutional right to travel and the right to drive. Those cases provide the better analogy here.
¶ 23 This court recognized the distinction between travel and driving in City of Spokane v. Port, 43 Wash.App. 273, 716 P.2d 945, review denied, 106 Wash.2d 1010, 1986 WL 420960 (1986). There, canvassing numerous authorities, this court had no difficulty concluding that requiring a driver's license did not impinge upon the right to travel. Id. at 274-277, 716 P.2d 945. Similarly, in State v. Clifford, 57 Wash.App. 127, 787 P.2d 571, review denied, 114 Wash.2d 1025, 792 P.2d 535 (1990), this court rejected a religious challenge to driver's licenses. Reiterating its earlier distinction between the right to travel and a driver's license, the court stated that the appellants were
free to travel public roads using alternative means of transportation, such as horseback, bicycle, taxi, or public transit. Requiring them to obtain a driver's license prior to operating a motor vehicle does not unconstitutionally infringe upon their freedom of movement.
Id. at 130, 787 P.2d 571.
¶ 24 Similarly, requiring Mr. Yallup to drive with a valid license and without being impaired by alcohol or drugs did not impede his right to travel. While he needed to be licensed and sober in order to exercise his right to use the roads "in common with" other citizens of the United States, he was free to travel by other methods if he did not want to live up to those obligations. He could travel as a passenger in a motor vehicle (which he claimed to be at trial), on public transit, or on alternative transportation. If, however, he chose to drive, he was subject to the same reasonable restrictions imposed on all others using the roadways.
*1101 ¶ 25 The right to travel guaranteed by the treaty with the Yakama Nation did not exempt Mr. Yallup from the criminal statutes governing use of the roadways. He was subject to the licensing and nonimpaired driving requirements. The treaty did not bar the criminal prosecution of this case.
¶ 26 Sentencing Issues. Mr. Yallup next presents two claims related to his sentence, asserting that the trial court used an incorrect offender score and lacked authority to impose a term of community custody.
¶ 27 The parties agree that a 1990 conviction for physical control should not have been included in the offender score. We agree with the parties and remand for resentencing.
¶ 28 Mr. Yallup also argues that the trial court erred by imposing the term of community custody. He cites to former RCW 9.94A.545 (2007) and argues that it does not authorize community custody in this instance. However, that statute only applies to sentences of 12 months or less. His authority is not apropos.
¶ 29 Instead, the relevant provision governing this case is former RCW 9.94A.715 (2007). That statute provided for a term of community custody whenever a person is sentenced to serve a term with the department of corrections for a crime against a person. Felony DUI is a "crime against persons." RCW 9.94A.411(2). The trial court correctly imposed a term of 9-18 months of community custody. Former RCW 9.94A.715.

CONCLUSION
¶ 30 The convictions are affirmed. The case is remanded for resentencing.
WE CONCUR: SWEENEY, and SIDDOWAY, JJ.
NOTES
[1] Toppenish is entirely within the Yakama Indian Reservation. Wesley v. Schneckloth, 55 Wash.2d 90, 91, 346 P.2d 658 (1959).
[2] On the same theories, Mr. Yallup also argues that the state of Washington lacked authority to suspend or even require that he have a driver's license or to impose an interlock requirement. Our discussion of the implied consent laws includes our view of his challenges to these other challenges. We also observe, however, that these license suspension and interlock requirements are clearly criminal sanctions. The stipulation recognizes that Mr. Yallup's license was suspended due to prior DUI or physical control convictions. CP at 55. Similarly, the ignition interlock requirement is a sanction imposed due to a criminal conviction. Former RCW 46.61.5055(10)(a) (2007); RCW 46.20.720. There simply is no question but that those obligations were imposed on Mr. Yallup due to his prior criminal behavior.
[3] The definition of "Indian country" includes "all land within the limits of any Indian reservation under the jurisdiction of the United States government ... including rights-of-way running through the reservation." 18 U.S.C. § 1151 (2006).
[4] The enforcement mechanism was not important. "But that an otherwise regulatory law is enforceable by criminal as well as civil means does not necessarily convert it into a criminal law within the meaning of Pub.L. 280. Otherwise, the distinction between § 2 and § 4 of that law could easily be avoided and total assimilation permitted." Cabazon Band, 480 U.S. at 211, 107 S.Ct. 1083.
[5] The criminal laws of the five mandatory states applied "to the same extent that such State has jurisdiction over offenses committed elsewhere within the State." Pub.L. 280 § 2(a), 67 Stat. at 588. In contrast, the civil authority of those states applied to "civil causes of action between Indians or to which Indians are parties." Pub.L. 280 § 4(a), 67 Stat. at 588.
[6] Mr. Yallup argues that the decision in Confederated Tribes of the Colville Reservation v. Washington, 938 F.2d 146 (9th Cir.1991), cert. denied, 503 U.S. 997, 112 S.Ct. 1704, 118 L.Ed.2d 412 (1992), which prohibited Washington from asserting authority over traffic infractions, governs here. Since that case involved civil infractions rather than crimes, it is not on point, a topic we discuss infra. We also note, however, that in Confederated Tribes the Ninth Circuit looked to the civil jurisdiction conferred on the mandatory states by § 4(a) of Public Law 280 rather than the permissive jurisdiction conferred by § 7 to the nonmandatory states such as Washington.
[7] The primary concern in Cabazon Band and the earlier decision in Bryan v. Itasca County, Minnesota, 426 U.S. 373, 96 S.Ct. 2102, 48 L.Ed.2d 710 (1976) (civil authority did not include ability to impose state taxes on reservations), was that states not use their civil authority to usurp tribal authority or impinge on tribal sovereignty. In contrast here, the criminal jurisdiction of Washington is being asserted against one individual, a tribal member, for his actions as a private individual.
[8] It is a noncriminal traffic infraction to fail to have a driver's license present while driving or fail to display it to an officer upon demand. RCW 46.20.017.
[9] Other states likewise have upheld implied consent statutes against Public Law 280 challenges. State v. McCormack, 117 Idaho 1009, 1013-1015, 793 P.2d 682 (1990); Bray v. Comm'r of Pub. Safety, 555 N.W.2d 757 (Minn.Ct.App.1996).